**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 9, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

GERARDO VALTIERRA-ROJAS,

       Defendant - Appellant.

No. 05-3390

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 05-CR-10094-01-WEB)**

John K. Henderson, Jr., Assistant Federal Public Defender, Wichita, KS, for
Defendant - Appellant.

Brent I. Anderson, Assistant United States Attorney (Eric F. Melgren, United
States Attorney, with him on the brief), Wichita, KS, for Plaintiff - Appellee.

Before **BRISCOE**, **EBEL**, and **MURPHY**, Circuit Judges.

**EBEL**, Circuit Judge.

      Defendant-Appellant Gerardo Valtierra-Rojas appeals his sixty-month

sentence, which is thirty-three months above the high-end of the sentencing range

recommended by the Sentencing Guidelines.  We conclude that, although this is a

substantial increase, it is reasonable under the compelling facts of this case. We therefore AFFIRM.

## BACKGROUND

In 1997, Mr. Valtierra-Rojas was convicted on one count of Involuntary Manslaughter While Driving Under The Influence Of Alcohol for striking and killing a motorcycle driver. See Kan Stat. Ann. § 21-3442. After serving his sentence on this conviction, he was deported to Mexico in April 2000. He illegally re-entered the United States on or around August 1 of that same year.

Mr. Valtierra-Rojas was convicted of several traffic crimes after his re-entry, including two convictions for driving under the influence—one in November 2002 and one in April 2003. As a condition of probation for this second DUI conviction, he attended substance abuse counseling. Mr. Valtierra-Rojas reports having attended treatment for four months, as well as having attended Alcoholics Anonymous meetings. He claims not to have consumed alcohol since April 2003.

In 2005, Mr. Valtierra-Rojas was indicted on one count of illegal re-entry after deportation for an aggravated felony (the 1997 involuntary manslaughter DUI conviction). He moved to dismiss the indictment, arguing that involuntary manslaughter DUI was not an "aggravated felony" under the Supreme Court's recent decision in Leocal v. Ashcroft, 543 U.S. 1 (2004), and thus that his

2

deportation was invalid.[1] The district court denied the motion, and thereafter Mr. Valtierra-Rojas entered a guilty plea conditioned upon his right to appeal this denial.

Prior to sentencing, a Presentence Report ("PSR") was prepared. The base offense level for the crime of illegal reentry is eight. United States Sentencing Guidelines ("U.S.S.G.") § 2L1.2(a). The PSR recommended a sixteen-point enhancement to the offense level based on the conclusion that involuntary manslaughter was a "crime of violence" under the Guidelines. Id. § 2L1.2(b)(1)(A)(ii) ("If the defendant previously was deported . . . after . . . a crime of violence . . . increase by 16 levels.").[2] Mr. Valtierra-Rojas objected to this enhancement, based in part on the Leocal decision. The district court agreed, ruling that "involuntary manslaughter DUI is not a crime of violence for the

_____

[1] In Leocal, the Court held that a similar crime—driving under the influence and causing serious bodily injury—was not a "crime of violence" and therefore not an "aggravated felony." 543 U.S. at 3-4.

[2] The application note to this Guideline provision explains that

"[c]rime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 application note (1)(B)(iii) (emphasis added).

3

purposes of Section 2L1.2."[3]  This ruling meant that Mr. Valtierra-Rojas's

advisory Guidelines range fell from 70-87 months (the range with the sixteen-

point enhancement) to 21-27 months.  However, the court went on to impose a

sentence of sixty months, finding:

> it is appropriate in this case to impose a sentence outside of the advisory guideline range.  Although the defendant's prior manslaughter conviction is not counted as a crime of violence, the court concludes that the defendant's extensive history of alcohol-related problems and his DUI's, and his demonstrated propensity for returning to the United States, show there is substantial reason to believe that the defendant's future conduct may again involve similar acts.  The court concludes that this risk – that the defendant may once again re-enter the United States and commit acts giving rise to a substantial risk of serious injury – together with the need for adequate punishment and deterrence, warrants a sentence above the applicable guideline range.  Accordingly, after considering all of the circumstances, the court concludes that a sentence of 60 months is appropriate in this case.

> The court further finds that a sentence of 60 months would be appropriate, under all of the factors in [18 U.S.C. §] 3553(a), even if the court were to find that the defendant was subject to the enhancement for a crime of violence, and that his guideline range was the 70-87 months listed in the PSR.  After considering the particular nature of the defendant's prior offense, as well as his personal history, the court concludes that a sentence of 60 months is appropriate.  Such a sentence reflects the serious nature of the defendant's history, but also takes into account the unintentional nature of the prior acts and the particular circumstances surrounding that accident.

Mr. Valtierra-Rojas timely appealed.

---

[3] The government does not appeal this ruling.

## DISCUSSION

## I.

Mr. Valtierra-Rojas's primary argument on appeal is that the district court erred in imposing a sentence thirty-three months higher than the high-end of the advisory Guidelines range. In United States v. Kristl, 437 F.3d 1050 (10th Cir. 2006), we announced a two-step approach for reviewing sentences imposed post-Booker.[4]

> First, we review, if challenged, whether the district court correctly calculated the defendant's guideline sentence, reviewing the district court's legal conclusions de novo and factual findings for clear error. Second, if the district court correctly determined the guideline sentence, then we review the sentence for reasonableness . . . .

United States Chavez-Diaz, 444 F.3d 1223, 1229 (10th Cir. 2006) (citing Kristl, 437 F.3d at 1054-55). The parties do not challenge the district court's calculations, thus we consider only whether the sentence imposed was "reasonable." "Sentencing decisions must be reversed when a sentence is unreasonable considering the factors enumerated in 18 U.S.C. § 3553(a)." United States v. Cage, 451 F.3d 585, 591 (10th Cir. 2006).[5]

---

[4] United States v. Booker, 543 U.S. 220 (2005).

[5] Section 3553(a) provides, in pertinent part:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in . . . this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(continued...)

**A.**

As a threshold matter, we consider Mr. Valtierra-Rojas's argument that sentences falling outside of the properly calculated Guidelines range are presumptively <u>un</u>reasonable and that "the Government must rebut the presumption and demonstrate the reasonableness of the sentence." Mr. Valtierra-Rojas does

---

[5](...continued)
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
        (i) issued by the Sentencing Commission . . . and
        (ii) that . . . are in effect on the date the defendant is sentenced . . . .
(5) any pertinent policy statement--
    (A) issued by the Sentencing Commission . . . and
    (B) that . . . is in effect on the date the defendant is sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

6

not cite, nor have we found, any legal authority to support this claim. As the Fourth Circuit reasoned in United States v. Moreland, 437 F.3d 424 (4th Cir.), cert. denied, 126 S. Ct. 2054 (2006),

> [a] sentence that falls within the properly calculated advisory guideline range is entitled to a rebuttable presumption of reasonableness. This does not mean, however, that a variance sentence is presumptively unreasonable. Such a ruling would transform an "effectively advisory" system . . . into an effectively mandatory one.

Id. at 433 (citation omitted); see also United States v. Howard 454 F.3d 700, 703 (7th Cir. 2006) ("Although a sentence outside the range does not enjoy the presumption of reasonableness that one within the range does, it does not warrant a presumption of unreasonableness."); United States v. Matheny, 450 F.3d 633, 642 (6th Cir. 2006) ("[T]his court's holding that sentences within the advisory guideline range are presumptively reasonable does not mean that sentences outside of that range are presumptively unreasonable."); United States v. Myers, 439 F.3d 415, 417 (8th Cir. 2006) ("We have determined that a sentence imposed within the guidelines range is presumptively reasonable. While it does not follow that a sentence outside the guidelines range is unreasonable, we review a district court's decision to depart from the appropriate guidelines range for abuse of discretion."). We join these circuits in holding that a sentence outside of the properly calculated Guidelines range is not presumptively unreasonable.

7

**B.**

We turn, then, to the key issue—whether Mr. Valtierra-Rojas's sentence is reasonable. Recently, this court elaborated on our review of sentences outside of the properly calculated advisory Guidelines range. In Cage, we noted that "although the Guidelines are listed as only one of the § 3553(a) factors, they are not just one factor among many. Instead, the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration when we determine reasonableness." 451 F.3d at 593.[6] We therefore "reject[ed] the concept that we, as judges, should determine 'reasonableness' under § 3553(a) without reference to the fact that the Guidelines represent a critical advisory aspect of the § 3553(a) factors." Id. at 594.[7] Instead, we explained that we would look to the "discrepancy between the advisory guidelines range and the actual sentence" to determine whether that sentence is reasonable. Id. Thus, "[t]he farther the [trial] court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." Moreland, 437 F.3d at 434

---

[6] Although Cage dealt with a sentence that was below the Guidelines range, that decision expressly noted that it was setting forth standards for reviewing both below-range and above-range sentences. 451 F.3d at 595 n.5.

[7] Cage did not change our general rule that we review whether a sentence is reasonable by considering the factors enumerated in § 3553(a), see, e.g., Kristl, 437 F.3d at 1053 ("Reasonableness review is guided by the factors set forth in 18 U.S.C. § 3553(a)."); rather, it simply made clear that the Guidelines, even though advisory, are afforded special weight given that they "are generally an accurate application of the factors listed in § 3553(a)." Cage, 451 F.3d at 594.

(cited in Cage, 451 F.3d at 594); see also Cage, 451 F.3d at 594 ("Because this case presents such an extreme divergence . . . it should be considered reasonable only under dramatic facts."); United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005) ("[T]he farther the judge's sentence departs from the guidelines sentence (in either direction-that of greater severity, or that of greater lenity), the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed.").

**1.**

Taking guidance from Cage, we first consider where along this sliding scale the present sentence falls. Looking to only the percentage of the divergence—122% above the high end of the range—the sentence might seem extreme. See United States v. Kendall, 446 F.3d 782, 784-85 (8th Cir. 2006) (calling 155% increase "extraordinary"). However, the percentage of divergence, alone, is not a sufficient metric; the absolute number of months above or below the Guidelines range is also a relevant consideration. For example, a defendant who receives a two-hundred-sixty-four-month sentence when the Guidelines recommend one hundred and twenty months is in the same boat—percentage-wise—as Mr. Valtierra-Rojas. We think it is clear, though, that a one-hundred-forty-month variance is more extreme than the thirty-three month variance at issue in this case. Thus, in evaluating the degree of departure from

9

the advisory guideline sentence, we must look at the divergence in terms of both percentage and absolute time. It is only when we consider these factors together that we can get a clear picture of the discrepancy between the Guidelines range and the sentence actually imposed.

The nature of the inquiry announced in Cage (the greater the divergence, the more compelling the reasons) is not one that allows for precision in measurement. That is, there are no strict guideposts that invoke certain levels of scrutiny; there is no formula into which we input the degree of divergence in order to generate precisely how compelling the district court's reasons need be. However, comparison with other cases is a useful tool. See United States v. Saenz, 428 F.3d 1159, 1162 (8th Cir. 2005) (looking to prior cases to evaluate the extremity of the present departure). In Cage, the district court imposed a sentence of six days imprisonment where the low-end of the advisory Guidelines range was forty-six months. Essentially, the court gave no prison sentence at all. Characterizing this case as one where the trial court "effectively ignore[d] the advice of the Guidelines," we noted that such an "extreme divergence" would only be justified under "dramatic facts." 451 F.3d at 594. The thirty-three-month/122% departure present in this case—resulting in a sixty-month sentence—is not so nearly extreme. However, we do consider the divergence substantial and, thus, compelling reasons must support the district court's decision (though they need not be as "dramatic" as those that would have justified

10

the departure in Cage).  See United States v. Castro-Juarez, 425 F.3d 430, 431, 436 (7th Cir. 2005) (noting that forty-eight-month sentence, where the high-end of the Guidelines range was twenty-one months, required a "sufficiently compelling" explanation).

**2.**

Here, the district court offered three reasons to justify its upward variance: (1) Mr. Valtierra-Rojas's "demonstrated propensity for returning to the United States;" (2) his "extensive history of alcohol-related problems;" and (3) the risk that he would again "re-enter the United States and commit acts giving rise to a substantial risk of serious injury."  Mr. Valtierra-Rojas does not contest that these factors are properly considered under § 3553(a).  See 18 U.S.C. § 3553(a)(1), (2)(B)-(C).  Rather, Mr. Valtierra-Rojas argues that there was no basis in the record to support the conclusions the district court drew from the facts in this case and, thus, that the sentence imposed was unreasonable.

**a.**

Mr. Valtierra-Rojas first takes issue with the district court's reliance on his "demonstrated propensity" to reenter the United States.  Mr. Valtierra-Rojas was deported once and has returned once.  He contends that it was unreasonable to impose a harsher sentence where the base sentence calculation (for illegal reentry after deportation) necessarily takes this one reentry into account.  "Under the Court's analysis," Mr. Valtierra-Rojas argues, "everyone convicted of illegal

11

reentry has the propensity to return to the United States and would therefore be vulnerable to an increased sentence for that reason alone."

Mr. Valtierra-Rojas's one reentry would certainly not, standing alone, be compelling enough to justify the upward variance at issue in this case. However, neither is it completely irrelevant. Mr. Valtierra-Rojas re-entered a mere four months after he was deported. While not demonstrating a propensity to return to the same degree that multiple illegal reentries would, we do not think it unreasonable to conclude that a near-immediate reentry shows some propensity—that is, "natural inclination" or "innate or inherent tendency," Webster's Third Int'l Dictionary 1817 (1986)—to return to this country. Further, it is not unreasonable to conclude that this propensity makes Mr. Valtierra-Rojas's behavior deserving of a somewhat greater punishment than, say, a defendant whose only return comes years after his deportation. Therefore, this reason should not be completely discounted.

**b.**

Mr. Valtierra-Rojas also objects to the district court's finding that he poses a threat of causing harm by drinking and driving. His argument is essentially this: while he clearly had an alcohol problem before 2003, since that "watershed date" and his alcohol abuse treatment he has not had another drink. Thus, Mr. Valtierra-Rojas contends, the district court erred in its factual finding that he posed a risk, presently or in the future. We do not attribute the same cathartic

12

quality that Mr. Valtierra-Rojas does to the 2003 date, and thus conclude that the district court's finding was not clearly erroneous. See In re Commercial Fin. Servs., Inc., 427 F.3d 804, 810 (10th Cir. 2005) ("A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made.") (quoting In re Miniscribe Corp., 309 F.3d 1234, 1240 (10th Cir. 2002)).[8]

There is evidence in the record that Mr. Valtierra-Rojas has not had a drink since 2003: (1) he told the PSR author that he had not; and (2) he has not had another alcohol-related conviction since that time. However, just because he has not been charged with a DUI does not dispositively prove he has not driven drunk. And even assuming that Mr. Valtierra-Rojas has not had a drink since 2003, it was not clearly erroneous for the district court to find that he still posed a threat. He acknowledges having a serious problem with alcohol in his past.

---

[8] Much of our post-Booker sentencing jurisprudence discusses the district court's fact-finding in terms of whether the court properly calculated the advisory Guidelines range. See, e.g., Chavez-Diaz, 444 F.3d at 1229 ("First, we review, if challenged, whether the district court correctly calculated the defendant's guideline sentence, reviewing the district court's legal conclusions de novo and factual findings for clear error. Second, if the district court correctly determined the guideline sentence, then we review the sentence for reasonableness . . . .") (citation omitted). However, the clear error standard of review for lower court fact-finding is a basic principle of appellate review. See Fed. R. Civ. P. 52(a) ("Findings of fact . . . shall not be set aside unless clearly erroneous.") Thus where, as here, a defendant argues that the district court unreasonably departed from the advisory Guidelines range based on erroneous findings of fact, we will review those findings for clear error.

Specifically, he stated to the PSR author that he first consumed alcohol in 1989 and that, before treatment he consumed about twelve beers a day on each weekend day (Friday, Saturday, and Sunday). The conclusion that a person with such a history, though sober for a couple of years, might relapse is not unfounded.

Further, imposing a harsher sentence based on Mr. Valtierra-Rojas's long history with alcohol and potential threat in the future is not unreasonable. It is true, as Mr. Valtierra-Rojas argues, that his Guidelines calculation assessed criminal history points for his DUI convictions. However, Mr. Valtierra-Rojas did not simply drink and drive. Rather, he killed someone while driving drunk and yet continued to engage in that behavior. Given that this incident did not stop him from driving drunk again, it is manifestly reasonable to view such a person as posing a higher risk than the average person of engaging in that behavior in the future, as well as requiring more deterrence than the Guidelines's basic computations account for. See 18 U.S.C. § 3553(a)(2)(B)-(C) (noting the sentence imposed should "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant").[9]

_____

[9] Mr. Valtierra-Rojas argues that there is no justification for "exacting additional punishment" because the death resulting from his DUI was unintentional. However, the district court did not simply increase the Mr. Valtierra-Rojas's sentence to impose further punishment, it expressly noted the risk that he would again endanger the public.

14

**c.**

In sum, the facts of this case—and particularly Mr. Valtierra-Rojas's propensity for dangerous criminal conduct when he is drinking—are compelling reasons justifying a substantial increase to the advisory Guidelines sentencing range. The district court's imposition of a sixty-month sentence was not unreasonable.

**II.**

At trial, Mr. Valtierra-Rojas filed a motion to dismiss the indictment—which charged re-entry after deportation for an aggravated felony—arguing the crime on which the initial deportation was predicated (involuntary manslaughter DUI) is not an aggravated felony. Specifically, he contended that (1) under the Supreme Court's decision in Leocal, a DUI crime with no mens rea requirement cannot be considered an aggravated felony, see 543 U.S. at 3-4[10]; and (2) that Leocal should be applied retroactively, as it is a decision of statutory interpretation. The district court denied the motion, finding that Mr. Valtierra-Rojas had not satisfied the statutory prerequisites for

---

[10] The district court found that the Kansas involuntary manslaughter DUI statute under which Mr. Valtierra-Rojas was convicted "appears to be materially similar" to the statute at issue in Leocal. See Kan. Stat. Ann. § 21-3442 ("Involuntary manslaughter while driving under the influence of alcohol or drugs is the unintentional killing of a human being committed in the commission of, or attempt to commit, or flight from an act described in K.S.A. 8-1567 and amendments thereto.").

15

collaterally challenging the validity of his earlier deportation order outlined in 8

U.S.C. § 1326(d).[11]

On appeal, Mr. Valtierra-Rojas concedes that this issue is foreclosed by our

recent decision in United States v. Rivera-Nevarez, 418 F.3d 1104 (10th Cir.

2005), which held that, although Leocal is retroactively applicable, the defendant

could not collaterally challenge his underlying deportation as he failed to meet the

requirements of § 1326(d). Id. at 1107-09. Thus, Mr. Valtierra-Rojas admits he

is raising this issue only to preserve it "in the event this Court or the United

States Supreme Court alters the holding in Rivera-Nevarez." In light of this

concession, we affirm the district court's ruling.[12]

## CONCLUSION

---

[11] Pursuant to 8 U.S.C. § 1326(d),

an alien may not challenge the validity of the deportation order . . .
unless the alien demonstrates that –
      (1) the alien exhausted any administrative remedies that
      may have been available to seek relief against the order;
      (2) the deportation proceedings at which the order was
      issued improperly deprived the alien of the opportunity for
      judicial review; and
      (3) the entry of the order was fundamentally unfair.


[12] The government agrees that Mr. Valtierra-Rojas's argument is precluded, but urges us to rule that even if Rivera-Nevarez is reversed, Mr. Valtierra-Rojas cannot prevail because he voluntarily waived his right to challenge his deportation. As Mr. Valtierra-Rojas concedes that his argument is precluded, we decline the government's invitation to make any further rulings. See Griffin v. Davies, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertake to decide issues that do not affect the outcome of a dispute.").

16

For the foregoing reasons, we AFFIRM.