FILED
United States Court of Appeals
Tenth Circuit

October 30, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GUSTAVO ANGEL-GUZMAN,

Defendant-Appellant.

No. 06-4303

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:06-CR-403-DB)**

---

Stephen J. Sorensen, Assistant United States Attorney (Brett L. Tolman, United States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

Kent R. Hart (Steven B. Killpack with him on the brief), Utah Federal Defender's Office, Salt Lake City, Utah, for Defendant-Appellant.

---

Before **HARTZ**, **McCONNELL** and **TYMKOVICH**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Defendant-Appellant Gustavo Angel-Guzman appeals his sentence which

the district court set at the low end of the range recommended by the United

States Sentencing Guidelines. Because this is the first appeal challenging the

substantive unreasonableness of a within-Guidelines sentence to be orally argued in this Circuit since the Supreme Court's decision in *Rita v. United States*, 127 S. Ct. 2456 (2007), we take this occasion to discuss our understanding of the current state of the law applicable to such challenges. *Cf. United States v. Garcia-Lara*, 499 F.3d 1133, 1135–38 (10th Cir. 2007) (discussing post-*Rita* appellate review of below-Guidelines sentence).

## I.  APPELLANT'S OFFENSE AND SENTENCING

On Nov. 21, 2006, Gustavo Angel-Guzman pleaded guilty to knowingly transporting eight illegal aliens within the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(II).  In his plea agreement, Mr. Angel-Guzman acknowledged that he "knew each of them had entered the United States illegally and . . . knew that at least some of them would be required to pay money when they arrived at their final destination as a smuggling fee."  R. Vol. I, at 4. The total offense level appropriate for illegally transporting between six and twenty-four illegal aliens for private financial gain is 15.  U.S.S.G. §§ 2L1.1.

The Probation Office prepared a presentence report (PSR) detailing the defendant's six prior misdemeanor convictions, which included four alcohol-related offenses, assault with a deadly weapon, and infliction of corporal injury on a spouse. The resulting criminal history score of 11 included two points for committing offenses while on parole and one point for committing offenses less

than two years after being released from confinement. This put Mr. Angel-Guzman in criminal history category V. The Guidelines range thus calculated was 30 to 37 months' imprisonment.

At the sentencing hearing, Mr. Angel-Guzman requested a downward departure, claiming that the PSR exaggerated the seriousness of his criminal history. He argued that his "criminal history is not prolific," and that he does not merit treatment "as if he was one of the worst of the worst." R. Vol. I, Doc. 4, at 2. He claimed that his assault charge was a result of throwing a bottle in self-defense, and that his spousal injury conviction stemmed from an incident in which he pulled his wife's hair. The government, in response, noted both the seriousness of the underlying crimes and the fact that Mr. Angel-Guzman had, despite his multiple arrests, thus far avoided deportation.

The district court sentenced the defendant to 30 months' incarceration, the low end of the applicable Guidelines range. It offered that "the defendant has been somewhat—I won't say lucky—fortunate in that his record is not worse, given the nature of the offenses, and I don't think that these alcohol related incidents involving driving should be diminished in terms of the danger they impose to the community." R. Vol. III, at 10.

Mr. Angel-Guzman timely appealed his sentence, raising both procedural and substantive claims.

## II. APPELLATE REVIEW

### A. Appellate review standards under *Booker*

In *United States v. Booker*, 543 U.S. 220, 244 (2005), a majority of the Supreme Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." This rendered many applications of the Federal Sentencing Guidelines, as enacted by Congress in the Sentencing Reform Act of 1986, unconstitutional. A differently-composed majority of the Court fashioned a remedy that would cure the constitutional problem by making the Guidelines non-mandatory, but at the same time would continue to serve "Congress' basic statutory goal" of "achiev[ing] greater uniformity in sentencing." *Id.* at 255–56. The Court repeatedly described uniformity in sentencing as Congress's central goal in enacting the Sentencing Reform Act, *see id*. at 246, 250, 253, 255, 256, 263, 264, and fashioned its remedy with that goal primarily in mind.

An important part of the Court's remedy was to retain appellate review of sentences. Because appellate courts could no longer review sentences for conformity to the Guidelines, however, the Court had to fashion a new appellate standard of review, which it termed "reasonableness." The Court did not provide a detailed analysis of what is entailed by this "reasonableness" standard, but it

-4-

noted that 18 U.S.C. § 3553(a) "sets forth numerous factors that guide sentencing" and instructed that those factors "will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *Id.* at 261. The Court stated that appellate review under this "reasonableness" standard "would tend to iron out sentencing differences." *Id.* at 263. "We cannot and do not claim that use of a 'reasonableness' standard will provide the uniformity that Congress originally sought to secure," the Court commented, *id.*, but appellate review for "reasonableness" would "nonetheless continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary." *Id.* at 264–65.

This raised the question—still unanswered—of how much discretion the district courts had to retain to solve the Sixth Amendment problem. To the extent that appellate courts police divergence from the Guidelines under the rubric of reasonableness, the system tends toward replicating, albeit in softer form, the mandatory character of the system that five Justices held unconstitutional in *Booker*.[1] But if district courts are essentially free to sentence at any point within

---

[1] To be precise, there is no constitutional objection to mandatory Guidelines as such, but only to a system in which facts found by a judge are necessary to support a higher sentence than would have been legally warranted on the basis of the jury's verdict and the defendant's admissions. The decision to make the Guidelines advisory in cases not involving sentence enhancements based on judge-

(continued...)

the statutory range, without substantive review either of their reasons for so doing or the extent of their variance, the congressional goal of uniformity which the *Booker* remedial decision sought to preserve would be seriously impaired.

Many courts of appeals, including this one, responded to this challenge by adopting a rebuttable presumption that properly calculated sentences within the recommended Guidelines range are substantively reasonable, while reviewing non-Guidelines sentences on a sliding scale, requiring more compelling justification for sentences the farther they diverge from the advisory guidelines range. *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam); *United States v. Valtierra-Rojas*, 468 F.3d 1235, 1239 (10th Cir. 2006). This approach was justified on the theory that it recognized the discretion of district courts to sentence outside the Guidelines for sufficient reasons, while continuing to reduce unwarranted sentencing disparity by reference to the only available benchmark for national practice, the Sentencing Guidelines. Critics, however, charged that the combination of a presumption in favor of within-Guidelines sentences and an increasingly rigorous standard of review in proportion to the degree of variance from the Guidelines range rendered the Guidelines "advisory"

---

(...continued)
found facts rested on the Court's perception of probable congressional intent, not on any constitutional requirement.

-6-

in name only.  *See, e.g.*, *United States v. Atencio*, 476 F.3d 1099, 1108–12 (10th Cir. 2007) (Murphy, J., dissenting from denial of en banc consideration).

Last Term, the Supreme Court appeared poised to resolve the apparent tension between the objectives of discretion and uniformity.  It granted certiorari in two cases, one involving a within-Guidelines sentence and one a below-Guidelines sentence.[2]  These cases offered three logical possibilities for resolving the tension:  (1) upholding the system of constrained discretion created by most Courts of Appeals; (2) making the system even more discretionary, at the expense of uniformity, by reducing the rigor of appellate review or eliminating appellate review for substantive reasonableness altogether; or (3) returning to a system of mandatory Guidelines, stripped of enhancements based on judge-found facts.  In the within-Guidelines case, *Rita v. United States*, 127 S. Ct. 2456 (2007), the Court affirmed the legitimacy of the appellate presumption of substantive reasonableness for properly calculated within-Guidelines sentences. Unfortunately, due to the untimely death of the criminal defendant in the below-Guidelines case, *Claiborne v. United States*, No. 06-5618, that case became moot. 127 S. Ct. 2245 (2007) (per curiam).  The lower courts were therefore left to ponder the Court's response to only one side of the balance.

---

[2] It is unfortunate that the Supreme Court has not (yet) decided to review an above-Guidelines sentence, which would offer a different and significant perspective on the relation between district court sentencing discretion and the Sixth Amendment rights of criminal defendants.

After Claiborne's death, the Supreme Court granted certiorari, and has now heard oral argument, in two new cases involving non-Guidelines sentences, *Gall v. United States*, 127 S. Ct. 2933 (2007) (mem.), and *Kimbrough v. United States*, 127 S. Ct. 2933 (2007) (mem.). In *Gall*, the defendant challenges the sliding-scale approach to appellate review of non-Guidelines sentences, while in *Kimbrough* the government challenges the discretion of district courts to vary from the Guidelines based on disagreement with specific policy judgments made by Congress.

Until such time as the Supreme Court may provide additional guidance in these cases, this Court has decided to adhere to our established framework for appellate review of non-Guidelines sentences. *See Garcia-Lara*, 499 F.3d at 1137–38. In this case, we consider the ramifications of *Rita* for this Circuit's approach to review of within-Guidelines sentences.

## B. Appellate review after *Rita*

Six Justices joined in a single majority opinion in *Rita*,[3] which now stands as the Court's latest word on the meaning of the *Booker* remedy. The principal issue addressed by the Court was whether it is permissible for appellate courts to

---

[3] Justices Stevens and Ginsburg also filed a concurrence, but because they joined in the opinion (and not merely the judgment) of the majority, their concurrence has no formal precedential weight. *See Marks v. United States*, 430 U.S. 188, 193–94 (1977). To the extent that Justice Stevens' concurrence departs from the majority, therefore, we are bound to follow the latter.

afford a presumption of reasonableness to properly calculated within-Guidelines sentences.  In upholding the legitimacy of this practice, the Court placed its seal of approval on that aspect of our Circuit's sentencing jurisprudence.  In the course of deciding that issue, however, the Court offered several refinements or clarifications regarding the meaning of the *Booker* compromise.  We must therefore consider whether other aspects of this Circuit's approach to the review of within-Guidelines sentences are consistent with the Court's decision in *Rita*.

*1.  The Presumption of Reasonableness*

In *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam), this Court adopted a rebuttable presumption that sentences within the recommended Guidelines range are reasonable.  In *Rita*, the Supreme Court held that this presumption is permissible, though not required.  The Court specifically cited our decision in *Kristl* as an example of the permissible presumption.  *Rita*, 127 S. Ct. at 2462 (citing *Kristl*, 437 F.3d at 1053–54).

The Court reasoned that the presumption of reasonableness is not a binding evidentiary presumption, but instead reflects the fact that

> by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case.  That double determination significantly increases the likelihood that the sentence is a reasonable one.

*Id.* at 2463.  As the Court explained, Congress instructed both the Sentencing

-9-

Commission and the district courts to approach their sentencing responsibilities in light of "the basic sentencing objectives" set out in 18 U.S.C. § 3553(a). *Id.* The Commission's task is to "collect and examine" the results of the "tens of thousands of sentences" rendered nationwide, to obtain expert advice, and to produce and continually revise "a set of Guidelines that seek to embody the § 3553(a) considerations, both in principle and in practice." *Id.* at 2464. The district judge's task is to examine the circumstances of the offense and the offender and to "impose a sentence sufficient, but not greater than necessary," to comply with the same set of sentencing objectives. 18 U.S.C. § 3553(a). The Court described the Commission's role as "wholesale" and the district court's as "retail," 127 S. Ct. at 2463, suggesting that the Commission makes decisions at the level of general policy while the district court tailors the sentence to the particular circumstances of the defendant. The district judge need not agree with the Commission's conclusions, *id.* at 2466, but "where judge and Commission *both* determine that the Guidelines sentence is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors." *Id.* at 2467. A sentencing formula produced by a deliberative, quasi-legislative body, applied to the specific facts of each case by a competent arbiter, will seldom require correcting.

The principal argument in *Rita* against a presumption of reasonableness of within-Guidelines sentences was that it creates a "substantial gravitational pull,"

-10-

tending "to produce Guidelines sentences almost as regularly as mandatory Guidelines had done." *Rita*, 127 S. Ct. at 2487 (Souter, J., dissenting). Because district judges face a greater risk of reversal when they sentence outside the Guidelines, the argument goes, they will take the safe course and adhere to the Guidelines, just as they had to do before *Booker*.

The strength of any such gravitational pull may reasonably be debated. Since *Booker*, and despite the presumption of reasonableness of within-Guidelines sentences, district courts have entered non-Guidelines sentences in nearly 14% of cases (not counting government-sponsored departures): a dramatic increase from the roughly 6% of non-Guidelines sentences rendered in the year prior to *Booker*.[4] The rate of sentences issued within the Guidelines has correspondingly fallen from 72.2% to 61.5%. In this Circuit—again, despite the presumption—the rate

---

[4] *Booker* was handed down on January 12, 2005. Post-*Booker* sentences are calculated from the total of fiscal year 2006 (Oct. 1, 2005 to Sept. 30, 2006) and the first three quarters of fiscal year 2007 (Oct. 1, 2006 to June 30, 2007). *See* U.S. Sentencing Commission, Preliminary Quarterly Data Report, 3rd Quarter Release, Preliminary Fiscal Year 2007 Data, at 2–3, 6–7 (tbl. 2), *available at* http://www.ussc.gov/sc_cases/Quarter_Report_3rd_07.pdf (omitting "§5K1.1 Substantial Assistance," "§5K3.1 Early Disposition," and "Other Gov't Sponsored"); U.S. Sentencing Commission, Statistical Information Packet, Fiscal Year 2006, Tenth Circuit, at 12–13, 16–17 (tbl. 9), *available at* http://www.ussc.gov/JUDPACK/2006/10c06.pdf (omitting same). Pre-*Booker* sentences are calculated from fiscal year 2004 (Oct. 1, 2003 to Sept. 30, 2004). *See* U.S. Sentencing Commission, Statistical Information Packet, Fiscal Year 2004, Tenth Circuit, at 13 (tbl. 8, pre-*Blakely*), 26 (tbl. 8, post-*Blakely*), *available at* http://www.ussc.gov/JUDPACK/2004/10c04.pdf (omitting "Substantial Assistance Departure" and "Government Initiated Departure").

of non-Guidelines sentences has soared from 5.1% in Fiscal Year 2004 to almost 13% in the years since *Booker*, and the rate of within-Guidelines sentences has slid from 73.9% to 61.0%. If there is a gravitational pull, escape velocity must be rather low.

More significantly, as the Supreme Court observed, even if the reasonableness presumption does tend to encourage district judges to sentence within the Guidelines, this is not an objectionable result:

> Rita may be correct that the presumption will encourage sentencing judges to impose Guidelines sentences. But we do not see how that fact could change the constitutional calculus. Congress sought to diminish unwarranted sentencing disparity. It sought a Guidelines system that would bring about greater fairness in sentencing through increased uniformity. The fact that the presumption might help achieve these congressional goals does not provide cause for holding the presumption unlawful as long as the presumption remains constitutional. And, given our case law, we cannot conclude that the presumption itself violates the Sixth Amendment.

*Rita*, 127 S. Ct. at 2467. In other words, gravitational pull that reduces sentencing disparity—so long as it does not rise to the level of mandate—is neither unconstitutional nor undesirable. See *id.* at 2466 ("A nonbinding appellate presumption that a Guidelines sentence is reasonable does not *require* the sentencing judge to impose that sentence." (emphasis in original)).

Nothing in the Court's description of the presumption, the effect of the presumption, the rationale for the presumption, or the arguments and counterarguments regarding it suggests any need for this Circuit to revise our

understanding. We have defined the presumption as a "deferential standard,"
which "either the defendant or the government may rebut by demonstrating that
the sentence is unreasonable when viewed against the other factors delineated in
[18 U.S.C.] § 3553(a)." *Kristl*, 437 F.3d at 1054. We have emphasized that the
presumption of reasonableness accorded within-Guidelines sentences on appeal is
not equivalent to a presumption of unreasonableness for variances. *United States
v. Begay*, 470 F.3d 964, 975–76 (10th Cir. 2006); *cert. granted on other grounds*,
___ S. Ct. ___, No. 06-11543 (Sept. 25, 2007). It is not the same as an
evidentiary presumption, which shifts the burden of proof to the other party. Nor
is it a traditional "presumption of law," defined in *Black's Law Dictionary* as "[a]
legal assumption that a court is required to make if certain facts are established
and no contradictory evidence is produced." Black's Law Dictionary 1204–05
(7th ed. 1999). Rather, as this Court has employed it, the presumption of
reasonableness is a commonsense reflection of the respective roles of district
court, appellate court, and Sentencing Commission in the determination of the
appropriate punishment in a particular case. The *Rita* decision confirms the
legitimacy of that approach.

    2. *Abuse-of-Discretion Review Under the Reasonableness Standard*

At one point in its opinion, the Supreme Court stated that "appellate
'reasonableness' review merely asks whether the trial court abused its discretion."

*Rita*, 127 S. Ct. at 2465.[5]  This appears to be a new formulation; the term "abuse of discretion" did not appear in the *Booker* opinion.  Justice Stevens' concurrence suggests that the essence of *Booker* was to repudiate the de novo standard of review imposed by Congress as part of the PROTECT Act, Pub. L. No. 108-21, § 401(d)(2), 117 Stat. 650, 670 (2003), and to restore the "abuse of discretion" standard applied to departures from the Sentencing Guidelines under *Koon v. United States*, 518 U.S. 81 (1996).  *See Rita*, 127 S. Ct. at 2470–71 (Stevens, J., concurring).

It is not clear from the *Rita* opinion whether the Court regarded its use of the "abuse of discretion" standard as meaningfully different from the prior language of "reasonableness."  The new term appears in a single sentence in the opinion, and the context does not contain any indication that the Court was announcing a change.  The idea of "abuse of discretion" is common in appellate practice, and covers a wide range of meanings.  As Judge Friendly once observed, "There are a half dozen different definitions of 'abuse of discretion,' ranging from ones that would require the appellate court to come close to finding that the trial court had taken leave of its senses to others which differ from the definition

---

[5] This discussion pertains only to the question of substantive reasonableness.  Determining whether a sentence is procedurally proper—an inquiry which this Court dubs "procedural reasonableness"—employs the standards of clear error as to findings of fact and de novo review as to conclusions of law.  *See, e.g.*, *United States v. Geiner*, ___ F.3d ___, No. 06-8055, 2007 WL 2358678, at *3 (10th Cir. Aug. 20, 2007).

of error by only the slightest nuance, with numerous variations between the extremes." Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 763 (1982). All we can say with confidence is that the term is indicative of deferential review. *See Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 399–405 (1990). But deference does not imply abdication. *Id.* at 402, 405. The *Rita* majority stressed that appellate review is not intended to be a rubber stamp: "In sentencing, as in other areas, district judges at times make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur." *Rita*, 127 S. Ct. at 2466.

We therefore do not believe that the Supreme Court's adoption of "abuse of discretion" nomenclature requires a change in this Circuit's approach. We have always regarded appellate review of sentencing decisions as "deferential." *Kristl*, 437 F.3d at 1054. Indeed, a review of our cases makes apparent that reasonableness review has functioned—in practice if not in name—as review for abuse of discretion. In *United States v. Rodriguez-Quintanilla*, 442 F.3d 1254, 1256–57 (10th Cir. 2006), we noted that "abuse of discretion," as employed in some of our pre-*Booker* cases, is so similar to reasonableness review that analysis under the two is often functionally equivalent. Although, prior to *Rita*, we were chary of formally equating the two standards, *see, e.g.*, *United States v. Cordova*, 461 F.3d 1184, 1188 (10th Cir. 2006), we noted in *Rodriguez-Quintanilla* a tendency to use the terms interchangeably, 442 F.3d at 1258. *See also, e.g.*,

-15-

*United States v. Sanchez-Juarez*, 446 F.3d 1109, 1117 (10th Cir. 2006) ("[T]he fact that there is inevitably a range of sentences that could be held reasonable means that our affirmance of a sentence will necessarily defer, in effect, to the district court's exercise of discretion in choosing a particular sentence within that range."); *United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005) (upholding a sentence as reasonable by stating that the district court was "exercising its discretion" and "was well within its discretion"). We therefore conclude that, with respect to within-Guidelines sentences, *Rita* "does nothing to change the appellate reasonableness standard this Circuit has applied since *Booker*." *Garcia-Lara*, 499 F.3d at 1135.

### 3. The Appellate Presumption and the Trial Judge

The *Rita* Court emphasized that a presumption of reasonableness "applies only on appellate review." *Rita*, 127 S. Ct. at 2465. "[T]he sentencing court," on the other hand, must "subject[] the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." *Id.* When a district court is considering what sentence to impose, it does not have the benefit of any prior judicial determination regarding the particular circumstances of the offender and the offense. The Sentencing Guidelines range does not apply, even presumptively, until the court has considered all relevant circumstances in light of § 3553(a). To presume that a Guidelines sentence is appropriate at this stage would be tantamount to presuming that the circumstances of the offender and the

-16-

offense lie within the heartland of the Guidelines—something that may not be presumed, but rather must be proven. At the appellate level, by contrast, there are factual findings and substantive conclusions by the trial court as well as quasi-legislative determinations by the Sentencing Commission, the combination of which, when they are in accord, warrant a presumption of reasonableness. *Rita*, 127 S. Ct. at 2463–65.

The decisions of this Circuit prior to *Rita* did not explicitly recognize that the presumption of reasonableness is confined to the appellate level. Indeed, some district judges in the Circuit interpreted our caselaw as embracing a presumption of reasonableness at the sentencing court level, as well. *See, e.g.*, *United States v. Conlan*, ___ F.3d ___, No. 06-1510, 2007 WL 2538047, at *2–*3 (10th Cir. Sept. 6, 2007) (reversing sentence for procedural unreasonableness where district judge took Guidelines as presumptively reasonable); *Begay*, 470 F.3d at 975–76 (same). In this respect, *Rita* portends a modest change in the practice of some judges within our Circuit. A district judge may not simply rest on the authority of the Sentencing Guidelines, but must weigh all relevant § 3553(a) factors.

### *4. Procedural Issues*

The *Rita* opinion observed that "the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. See [Fed. R. Crim. P.] 32(f), (h), (i)(C) and (i)(D); see also

*Burns* v. *United States*, 501 U.S. 129, 136 (1991) (recognizing importance of notice and meaningful opportunity to be heard at sentencing)." *Rita*, 127 S. Ct. at 2465.[6] This accords with our Circuit's holding in *United States v. Atencio*, 476 F.3d 1099, 1102–04 (10th Cir. 2007), requiring notice under Rule 32(h) and opportunity to be heard when parties object to the presentence report or the district court contemplates a variance.

The *Rita* opinion also provided guidance regarding how extensive the sentencing court's statement of reasons must be.[7] Title 18 U.S.C. § 3553(c) requires the district court, in all cases, to state the "reasons for its imposition of the particular sentence," but if the court imposes a sentence outside the Guidelines range, the statute requires the court to provide "the specific reason for the imposition of a sentence different from [the Guideline range]," 18 U.S.C. § 3553(c)(2). Thus, "when a judge decides simply to apply the Guidelines to a particular case," the Court explained, "doing so will not necessarily require lengthy explanation. Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence . . . ." *Rita*, 127 S. Ct. at 2468. On the other hand, when the parties raise "nonfrivolous reasons for imposing a different sentence, . . . the

___

[6] There is no Fed. R. Crim. P. 32(i)(C) or (i)(D); presumably the Court intended Rules 32(i)(1)(C) and (i)(1)(D).

[7] This portion of the *Rita* opinion was joined by eight Justices.

-18-

judge will normally go further and explain why he has rejected those arguments." *Id.* And "[w]here the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so." *Id.* In *Rita*, the district judge had said little more than that the sentence at the bottom of the Guidelines range was "appropriate." *Id.* at 2469. Despite acknowledging that "the judge might have said more," the Supreme Court found this explanation legally sufficient. *Id.*

This would not seem to contemplate explanations more searching or extensive than those required by our Circuit in cases prior to *Rita*. *See, e.g.*, *United States v. Jarrillo-Luna*, 478 F.3d 1226, 1230 (10th Cir. 2007) ("[A] district court's duty to explain why it chose the given sentence does not also require it to explain why it decided against a different sentence."); *United States v. Traxler*, 477 F.3d 1243, 1250 (10th Cir. 2007) ("The sentencing judge must address the substance" of a defendant's nonfrivolous argument for a below-Guidelines sentence, "but need not refer explicitly to every § 3553(a) factor."); *United States v. Lopez-Flores*, 444 F.3d 1218, 1222 (10th Cir. 2006) (where sentence was within Guidelines and defendant raised no "substantial contentions" pointing elsewhere, we "do not require the court to explain on the record how the § 3553(a) factors justify the sentence"); *United States v. Rines*, 419 F.3d 1104, 1107 (10th Cir. 2005) (sentencing judge need not "march through § 3553(a)'s sentencing factors").

### III. ANALYSIS OF THE SENTENCE IN THIS CASE

Mr. Angel-Guzman was granted full opportunity to be heard at sentencing and does not challenge the procedural reasonableness of his sentence. Applying this Circuit's precedents regarding appellate review of within-Guidelines sentences as summarized in the preceding section and as approved by the Supreme Court in *Rita*, we conclude that the district court was within its discretion in sentencing the defendant to the low end of the advisory Guidelines range. Because Mr. Angel-Guzman's sentence was properly calculated and within the advisory Guidelines range, it is entitled to the presumption of reasonableness discussed above.

Mr. Angel-Guzman argues primarily that the sentence imposed on him was unreasonable because the calculation of his criminal history level failed to take into account the allegedly minor nature of his previous offenses. His argument may be understood as a procedural attack on the district judge's decision not to grant a downward departure from the Guidelines or as a substantive challenge to the resulting sentence of 30 months. Either way, the objection is not well taken.

#### A. Denial of departure

Under the Guidelines, a district judge may grant a downward departure "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history . .

. ." U.S.S.G. § 4A1.3(b). If Mr. Angel-Guzman's claim is a procedural one, this Court lacks the ability to review it. "Even after *Booker*, '[t]his court has no jurisdiction . . . to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant the departure.'" *United States v. Fonseca*, 473 F.3d 1109, 1112 (10th Cir. 2007) (quoting *United States v. Sierra-Castillo*, 405 F.3d 932, 936 (10th Cir. 2005)) (emendation and ellipsis in original).[8] Denial of a departure may only be reviewed if the district court "unambiguously states it lacks discretion to grant the departure." *Id*. Mr. Angel-Guzman makes no such allegation here. In any event, our reading of the sentencing transcript indicates that the judge refused the motion to depart because, having considered the nature of Mr. Angel-Guzman's prior crimes, he simply did not believe a departure to be warranted. Our

---

[8] Under 18 U.S.C. § 3742(a), defendant may appeal a sentence if it

(1) was imposed in violation of law;
(2) was imposed as a result of an incorrect calculation of the sentencing guidelines; or
(3) is greater than the sentence specified in the applicable guidelines range . . . ; or
(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

Paragraph (a) thus allows appeal of an upward departure; there is no corresponding permission to appeal a downward departure. We have repeatedly held that this limitation is jurisdictional. *E.g.*, *Sierra-Castillo*, 405 F.3d at 936; *United States v. Castillo*, 140 F.3d 874, 887 (10th Cir. 1998).

procedural review of Mr. Angel-Guzman's sentence may therefore come to an end.

### B.  Substantive unreasonableness

Mr. Angel-Guzman's appeal may also be interpreted as advancing the position that his sentence, although within a properly calculated Guidelines range, is substantively unreasonable because the true nature of his criminal history is less serious than his criminal history category of V implies.  In this regard, his claim hinges on two premises.  First, he argues, because his prior convictions are non-violent, they must be non-serious.  Second, Mr. Angel-Guzman claims that the state judges in his prior criminal cases sentenced him at the low end of the applicable statutory ranges and thus impliedly made a determination that his offenses were not serious—a determination, he argues now, with which the district court should not have disagreed.

### 1.  The Seriousness of Driving Drunk

We believe the district court acted within its discretion in treating Mr. Angel-Guzman's prior offenses as sufficiently serious to warrant a criminal history category of V.  Driving under the influence of an intoxicant is not without the real possibility of physical injury to others:  "[T]he risk of injury from drunk driving is neither conjectural or speculative . . .  Drunk driving is a reckless act that often results in injury, and the risks of driving while intoxicated are well known."  *United States v. Farnsworth*, 92 F.3d 1001, 1008–09 (10th Cir. 1996);

-22-

*see also United States v. Begay*, 470 F.3d 964 (10th Cir. 2006), *cert. granted*, ___ S. Ct. ___, No. 06-11543 (Sept. 25, 2007). And hair-pulling and bottle-throwing, while not the apex of violent crime, are certainly not peaceable activities.

As the Guidelines recognize, violence is not the *sine qua non* of seriousness. In fact, the guideline which contains instructions for computing criminal history, § 4A1.2, explicitly includes convictions for driving under the influence, noting that "[s]uch offenses are not minor traffic infractions." U.S.S.G. § 4A1.2 n.5. In noting the inherent seriousness of a DWI infraction, the district court did not unduly speculate as to the facts behind Mr. Angel-Guzman's prior convictions, but merely underscored the conclusions of this Court, other Courts of Appeals, and of the Sentencing Commission: that "the risk of injury from drunk driving is neither conjectural nor speculative," *United States v. Rutherford*, 54 F.3d 370, 376 (7th Cir. 1995), and that "drunk driving is an irresponsible and often fatal act," *United States v. Lucio-Lucio*, 347 F.3d 1202, 1208 (10th Cir. 2003).

Mr. Angel-Guzman points out that we have previously affirmed downward departures tied to criminal history calculations. *E.g.*, *United States v. Collins*, 122 F.3d 1297, 1304 (10th Cir. 1997). Even if the defendant's situation here were comparable to that of Mr. Collins—which it is not—such a comparison ignores the different procedural postures of the two cases. *Collins* was a pre-*Booker* sentencing departure, in which we reviewed the district court's decision to grant a

-23-

departure deferentially, for abuse of discretion. *Id*. at 1303. Here, we show similar deference to the district court in its decision not to grant a variance. Thus, even if the two defendants had identical histories and committed identical crimes, a decision by our Court to uphold a district court's departure in one case cannot possibly be read to entitle later defendants in similar cases to a downward variance as a matter of right, or to fetter the sentencing discretion Congress has vested in the district courts.

Mr. Angel-Guzman's problems with alcohol are not limited to a single incident: his four alcohol-related convictions and one outstanding arrest warrant show that, despite repeated incarcerations, Mr. Angel-Guzman continues to drive under the influence. Moreover, his sixfold revocation or termination of probation shows that he is not susceptible to softer inducements. *Cf. United States v. Valtierra-Rojas*, 468 F.3d 1235, 1237 (10th Cir. 2006) (affirming an upward variance because "the defendant's extensive history of alcohol-related problems and his DUIs, and his demonstrated propensity for returning to the United States, show there is substantial reason to believe that the defendant's future conduct may again involve similar acts.").

Moreover, the circumstances of Mr. Angel-Guzman's offense, as recounted in the PSR, support the reasonableness of the sentence. *See* R. Vol. IV, at 2–3. With the assistance of a co-defendant, he transported eight illegal aliens from Los Angeles to various locations, for a fee. The trip lasted approximately fifteen

hours, during which the passengers traveled without food, without seatbelts, and with only one bathroom break. Mr. Angel-Guzman instructed the passengers that, in the event they were apprehended, they should lie about their nation of origin to facilitate a second attempt at illegal entry and should also state, falsely, that they shared in the driving. During the initial traffic stop he reminded the aliens of these instructions. We agree with the government that this conduct suggests an "experienced and callous engagement in alien smuggling" rather than a casual one-time involvement. U.S. Br. at 20.

In light of the facts presented to the district court and the applicable Guidelines range of 30 to 37 months' imprisonment, the district judge did not abuse his discretion in imposing a sentence of 30 months.

*2. Consideration of State Judges' Sentencing Decisions*

The sentences Mr. Angel-Guzman received in his six state-court convictions comprised a grand total of 68 days' jail, 11 months and 29 days suspended jail sentence, 168 months' probation, and $3,773 in fines. For probation violations, he was ordered to serve an additional total of 461 days' jail. Mr. Angel-Guzman argues that these sentences were toward the very low end of what might have been imposed, and therefore evince a judicial determination of the non-seriousness of the underlying offenses. "Instead of deferring to the judges who sentenced Mr. Angel-Guzman previously," he contends, "the [federal] sentencing judge below imposed his own view of the facts absent any supporting

evidence" when he considered them a sufficient predicate for a criminal history category of V. Aplt's Br. at 10.

We cannot agree. There was no evidence before the district court to indicate that Mr. Angel-Guzman's state sentences were any more lenient than the average sentences given in those courts for the same offenses. Nor was there evidence of the reasoning employed by those state judges in arriving at their sentencing decisions. On this record, we could not say with any confidence that these offenses were necessarily so trivial, or these sentences so lenient in an absolute sense, that they cannot reasonably support a criminal history category of V. A year and a half in jail, another year suspended, and fourteen years' probation is not at all insignificant; and this is even more true when 461 days of that jail time was imposed for repeated violations of the conditions of probation.

Appellant claims that the district judge "erred in speculating that Mr. Angel-Guzman's criminal history was more serious than it appears on paper." Aplt's Br. at 13. He relies on the district judge's statements that "I have no idea how this individual was never deported after so many convictions" and that Mr. Angel-Guzman had been "fortunate" that his criminal history record "is not worse, given the nature of the offenses." R. Vol. III, at 9, 10. If the court had departed or varied upward on these grounds, without more formal factfinding into the circumstances, the argument might be well taken. But it did not. The sentencing judge merely mentioned these considerations in declining the

-26-

defendant's suggestion that his criminal history was overrated. It is not improper for a judge, in declining to exercise discretion in favor of the defendant based on extra-record characterizations of the seriousness of prior conduct, to note that there could be countervailing considerations going the other way. The judge did not invoke Mr. Angel-Guzman's "fortunate" experience as a reason for sentencing more harshly than the norm, but only as a reason not to vary downward.

*United States v. Collins* is again of no aid to Mr. Angel-Guzman. A decision upholding a sentencing court's discretion to sentence below the Guidelines is not precedent for holding that another sentencing court abuses its discretion when it declines to do so. *See United States v. Pruitt*, ___ F.3d ___, No. 06-3152, 2007 WL 2430125, at \*14–\*15 (10th Cir. Aug. 29, 2007) (McConnell, J., concurring) (upholding within-Guidelines sentence despite examples of below-Guidelines sentences in seemingly similar cases). Although the sentencing judge in *Collins* took into consideration the relatively lenient sentence imposed for the defendant's previous convictions, he also gave particular weight to the fact that those convictions had occurred nearly ten years prior, as well as to other mitigating factors not present here. *Collins*, 122 F.3d at 1300. Having considered Mr. Angel-Guzman's criminal history and the nature of the offense involved in the case at bar, with appropriate deference to the district judge's findings and conclusions, we are satisfied that a within-Guidelines sentence of 30 months was well within the sentencing court's discretion.

### III.  CONCLUSION

The Sentencing Commission's recommendations regarding an appropriate sentence in this case coincided with the district court's determinations regarding the circumstances of the offender and the offense.  There is no conflict between the twin objectives of sentencing discretion and uniformity.  The record provides no basis for appellate second-guessing of the combined judgment of the two primary sentencing institutions.  For these reasons, the judgment of the United States District Court for the District of Utah is **AFFIRMED**.