**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 31, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

ELADIO BELTRAN-LOPEZ, a/k/a
Eladio Lopez Beltran,

  Defendant - Appellant.

No. 06-1530
(D.C. No. 06-cr-209-EWN)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **EBEL**, and **McCONNELL**, Circuit Judges.

---

  Defendant-Appellant Eladio Beltran-Lopez appeals the 125-month sentence

the district court imposed for his conviction for unlawfully reentering the United

States, after having previously been deported and after a previous aggravated

felony conviction. Beltran-Lopez argues that his sentence is both procedurally

and substantively unreasonable. Having jurisdiction to consider his appeal

---

[*]After examining the parties' briefs and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we disagree and AFFIRM.

## I.  Background

A jury convicted Beltran-Lopez of unlawfully reentering the United States after having previously been deported, in violation of 8 U.S.C. § 1326(a), and after having previously been convicted of an aggravated felony, see id. § 1326(b).[1]  The presentence report ("PSR"), in calculating Beltran-Lopez's

---

[1]Section 1326(a) provides:

Subject to subsection (b) of this section, any alien who—

> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien's previously denied admission and removal, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(b) increases the statutory maximum penalty for such an offense from two to twenty years in prison if the defendant has had a prior aggravated felony conviction: "Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection . . . whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined

(continued...)

2

offense level, started with a base offense level of eight, to which the PSR added sixteen levels under U.S.S.G. § 2L1.2(b)(1)(A)(i) because Beltran-Lopez had a prior drug trafficking conviction—a 1988 California conviction for selling marijuana, stemming from Beltran-Lopez's involvement as the middleman in a ten-dollar sale of marijuana to an undercover police officer. Section 2L1.2(b)(1)(A)(i) provides for this sixteen-level enhancement"[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months."[2] Although the California court originally

_____

[1](...continued)
under Title 18, imprisoned not more than 20 years, or both." 8 U.S.C. § 1326(b)(2). In this case, the Government charged that Beltran-Lopez had three prior aggravated felony convictions: (1) a California conviction for selling marijuana; 2) a California conviction for involuntary manslaughter; and 3) a California conviction for manufacturing deceptive identification documents.

[2]The PSR used the 2005 sentencing guidelines to calculate Beltran-Lopez's advisory sentencing range. That version of § 2L1.2 provides:

**Unlawfully Entering or Remaining in the United States**

(a) Base Offense Level: **8**

(b) Specific Offense Characteristic

    (1) Apply the Greatest:

        If the defendant previously was deported, or unlawfully remained in the United States, after —

(continued...)

3

sentenced Beltran-Lopez to 240 days in jail and three years' probation for this

drug trafficking offense, his probation was later revoked when Beltran-Lopez was

convicted of involuntary manslaughter in 1992.[3] As a result of the probation

revocation, a California court sentenced Beltran-Lopez to two years in prison on

the drug trafficking conviction, to run concurrent with his involuntary

[2](...continued)

> (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by **16** levels;
>
> (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by **12** levels;
>
> (C) a conviction for an aggravated felony, increase by **8** levels;
>
> (D) a conviction for any other felony, increase by **4** levels; or
>
> (E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by **4** levels.

[3]The PSR indicates that Beltran-Lopez pleaded nolo contendere to the drug trafficking offense in 1988. Because he failed to appear again in court on this matter, he was not sentenced on the drug trafficking conviction until 1990, after having been arrested on traffic charges. Therefore, he remained on probation at the time of his 1992 involuntary manslaughter conviction.

manslaughter conviction.[4]

With the sixteen-level enhancement under § 2L1.2(b)(1)(A)(i), Beltran-Lopez's total offense level was twenty-four. Combined with his criminal history category VI, this offense level produced an advisory guideline range of between 100 and 125 months. Beltran-Lopez does not challenge the accuracy of these calculations.

At sentencing, however, Beltran-Lopez requested a downward variance to a seventy-seven-month sentence, arguing the sixteen-level enhancement under § 2L1.2(b)(1)(A)(i) overstated the seriousness of his prior drug trafficking offense and produced an unwarranted sentencing disparity between his sentence and the sentences of those defendants whose prior drug trafficking convictions were for much more serious conduct. The district court implicitly rejected the requested variance and instead imposed a sentence at the top of the advisory guideline range, 125 months. Beltran-Lopez appeals from that sentence.

## II.    Merits

We review the District Court's sentencing determination under a reasonableness standard, which is guided by the statutory factors delineated in 18 U.S.C. § 3553(a). Reasonableness review has both procedural and substantive components. In other words, the

---

[4]Section 2L1.2(b)(1)(A)(i) provides for a sixteen-level enhancement based upon "a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months." "The length of the sentence imposed includes any term or imprisonment given upon revocation of probation, parole, or supervised release." U.S.S.G. § 2L1.2, app. n. 1(B)(vii).

reasonableness standard set forth in <u>Booker</u>[5] necessarily encompasses both the reasonableness of the length of the sentence, as well as the <u>method</u> by which the sentence was calculated.

<u>United States v. Hildreth</u>, 485 F.3d 1120, 1127 (10th Cir. 2007) (citations, quotations omitted; footnote added).  The factors in 18 U.S.C. § 3553(a) that guide the sentencing determination include the

> (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.  The provision also tells the sentencing judge to "impose a sentence sufficient, but not greater than necessary, to comply with" the basic aims of sentencing as set out above.

<u>Rita v. United States</u>, 127 S. Ct. 2456, 2463 (2007) (quoting 18 U.S.C. § 3553(a)).  In this appeal, Beltran-Lopez asserts his sentence is both procedurally and substantively unreasonable.

### A.    Procedural unreasonableness

"To impose a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range and apply the factors set forth in § 3553(a)."  <u>Hildreth</u>, 485 F.3d at 1127 (quotation omitted).  Although Beltran-Lopez does not challenge the calculation of his advisory sentencing range under the guidelines, he asserts that his sentence is procedurally unreasonable in

---

[5]<u>United States v. Booker</u>, 543 U.S. 220 (2005).

two other ways: 1) the district court did not adequately consider Beltran-Lopez's argument, made under 18 U.S.C. § 3553(a)(6), for a downward variance in order to avoid an unwarranted sentencing disparity; and 2) the district court erred in treating the advisory guideline range as presumptively reasonable.

### 1. Request for downward variance to avoid unwarranted sentencing disparity

#### a. Standard or review

Beltran-Lopez argues that the district court erred in failing to explain why it rejected his request for a downward variance under 18 U.S.C. § 3553(a)(6).[6] Although Beltran-Lopez "argued for a sentence below the [advisory] Guidelines range at the sentencing hearing, he did not raise the procedural objection he now asserts"—that the sentencing court failed to explain why it rejected his argument for a downward variance—"after the district court imposed sentence." United States v. Romero, 491 F.3d 1173, 1174, 1176 (10th Cir. 2007), cert. denied, 2007 WL 2300385 (U.S. Oct. 1, 2007) (No. 07-5790). We, therefore, review this argument for plain error. See id. at 1174, 1177-78 (reviewing defendant's appellate argument that district court failed to address his request for a below-guideline sentence for plain error when defendant did not object at the

---

[6]Beltran-Lopez expressly requested a downward departure. But when, as here, a defendant requests a below-guidelines sentence based upon the 18 U.S.C. § 3553(a) factors, we refer to that request as one seeking a downward variance. See United States v. Atencio, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007).

7

sentencing proceeding, after the court imposed a within-guidelines sentence).[7]

Beltran-Lopez, therefore, will be entitled to relief only if "there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1178. It is Beltran-Lopez's burden to show that he has satisfied this plain-error standard. See id. at 1178-79.

### b.    Merits

Beltran-Lopez's argument fails at the first plain-error inquiry because the district court did not err in this case. Although 18 U.S.C. § 3553(c) requires the court to "state in open court the reasons for its imposition of the particular sentence," that statutory provision "requires the court to provide only a general statement" of those reasons. United States v. Cereceres-Zavala, 499 F.3d 1211, 1216-17 (10th Cir. 2007) (quotations omitted); see also United States v.

---

[7]Beltran-Lopez argues that plain-error review is "inappropriate, given the nature of the procedural error in this case. When both written and oral arguments are made in the district court, counsel should not be required to object when the judge, as in this case, does not address such arguments prior to imposing sentence." This panel, however, is bound by prior Tenth Circuit precedent, "absent en banc reconsideration or a superseding contrary decision by the Supreme Court." United States v. Ladeaux, 454 F.3d 1107, 1111 n.4 (10th Cir. 2006) (quotation omitted). Further, this court has recognized there are benefits to requiring that the defendant object to the procedure by which the district court imposed a sentence, immediately after the court imposes that sentence. See Romero, 491 F.3d at 1177-78. Those benefits include the fact that "a timely objection to the method used to calculate the sentence can alert the district court and opposing counsel, so that a potential error can be corrected, obviating any need for an appeal." Id. at 1177 (quotation, alterations omitted).

8

Ruiz-Terrazas, 477 F.3d 1196, 1199, 1202 (10th Cir. 2007), cert. denied, 2007 WL 1579417 (U.S. Oct. 1, 2007) (No. 06-11540). "[T]his general statement need involve no ritualistic incantation to establish consideration of a legal issue, nor do we demand that the district court recite any magic words to prove that it considered the various factors Congress instructed it to consider." Ruiz-Terrazas, 477 F.3d at 1202 (quotation omitted). This is because we "traditionally presume" that "trial judges . . . know the law and apply it in making their decisions." Id. at 1201 (quotation omitted). We will, therefore, only "step in and find error when the record gives us reason to think that our ordinary . . . presumption that the district court knew and applied the law is misplaced." Id. at 1202; see also United States v. Pruitt, No. 06-3152, 2007 WL 2430125, at *5 (10th Cir. Aug. 29, 2007) (on reh'g) (noting "we will not presume that the district court fulfilled its duty [to consider 18 U.S.C. § 3553(a) factors] if the record provides no indication that it did so and no clear explanation of the sentence imposed"). This is true even when, as in this case, the district court did not expressly address a defendant's arguments for a below-guideline sentence. See Cereceres-Zavala, 499 F.3d at 1213, 1217-18; United States v. Jarrillo-Luna, 478 F.3d 1226, 1230 (10th Cir. 2007); Ruiz-Terrazas, 477 F.3d at 1199-1201.

There is nothing in the record in this case that suggests that the district court did not consider the 18 U.S.C. § 3553(a) factors before imposing a within-Guideline sentence. The district court entertained Beltran-Lopez's

9

arguments for a downward variance, made both in writing before sentencing and verbally during sentencing.  See Ruiz-Terrazas, 477 F.3d at 1202-03 (considering this factor in upholding procedure by which court imposed within-Guideline sentence, despite defendant's request for a below-guidelines sentence).  The court further indicated that it had considered the 18 U.S.C. § 3553(a) factors.  In fact, the sentencing court specifically focused on Beltran-Lopez's history and characteristics, id. § 3553(a)(1), addressing Beltran-Lopez's extensive criminal history in some detail,[8] as well as expressly mentioning the nature and circumstances of the crime for which the court was imposing sentence, the kinds of sentences available for this offense, the advisory guideline range, the need to protect the public from future crimes Beltran-Lopez might commit, and the need to deter him, an offender who had three times entered the United States illegally, twice after being deported, id. § 3553(a)(2).  The court also explained the

_____

[8]The PSR indicated that, in addition to his 1988 California drug trafficking conviction, Beltran-Lopez also had a 1992 California involuntary manslaughter conviction, resulting from an incident where, during a holiday party for the employees and friends of his "counterfeit identification ring," he got into a physical confrontation with one of his employees, knocked the employee to the ground and kicked him in the head numerous times, inflicting injuries from which the employee later died; a 1995 California conviction for battering his spouse; a 1997 California conviction for manufacturing deceptive identification documents; and a 2004 Colorado conviction for possessing cocaine.  Courts have revoked his probation or suspended sentences on several different occasions.  Beltran-Lopez has also been convicted of numerous traffic infractions.  He was deported in 1993 and again in 1998.  He was most recently discovered unlawfully in the United States when authorities apprehended him for cocaine possession.

10

guideline calculations underlying the advisory guideline range on which it relied. Id. § 3553(a)(4); see Ruiz-Terrazas, 477 F.3d at 1203; see also Cereceres-Zavala, 499 F.3d at 1217 (concluding there was no error where the district court cited to the PSR's calculations; noting "[c]ontext and the record make clear the district court's reasoning for rejecting [the defendant's] arguments") (quotation omitted).

The record reflects that the district court did not rely solely on the advisory guideline range, but instead properly considered whether the 18 U.S.C. § 3553(a) factors supported imposing a within-guideline sentence in this case. Therefore, Beltran-Lopez has failed to establish that there was any procedural error in this regard. See Cereceres-Zavala, 499 F.3d at 1217-18; Ruiz-Terrazas, 477 U.S. at 1200.

Even if we were to assume that in this case the district court's failure to explain why it rejected a downward variance was plain error, however, that error did not affect Beltran-Lopez's substantial rights. "For an error to have affected substantial rights, the error must have been prejudicial: It must have affected the outcome of the district court proceedings." United States v. Bradford, 423 F.3d 1149, 1161 (10th Cir. 2005) (quotation omitted). Beltran-Lopez fails to explain how the district court's failure to explain why it rejected his argument for a downward variance affected the outcome of this sentencing proceeding. See Romero, 491 F.3d at 1179; see also Ruiz-Terrazas, 477 F.3d at 1203 (in dicta; asking whether any error, resulting from the district court's failure to explain,

11

with greater specificity, the sentence the court imposed, would have affected the outcome of the sentencing proceeding).

### 2. Treating the advisory guidelines range as presumptively reasonable

In a single statement made during the sentencing hearing, the district court referred to the advisory guideline range calculated by the PSR as the "presumptive imprisonment range." Beltran-Lopez argues that the district court erred procedurally by treating the advisory guidelines range as presumptively reasonable.

### a. Standard of review

Beltran-Lopez did not object, during sentencing, to the district court's reference to the advisory guideline range as the "presumptive imprisonment range." Therefore, this court would ordinarily review this argument for plain error. See United States v. Begay, 470 F.3d 964, 976 (10th Cir. 2006), petition for cert. granted, 2007 WL 1579420 (U.S. Sept. 25, 2007) (No. 06-11543); see also United States v. Conlan, No. 06-1510, 2007 WL 2538047, at *3 (10th Cir. Sept. 6, 2007) (considering whether to apply plain-error review to similar argument, but concluding that the defendant in that case had adequately preserved the issue during sentencing); cf. United States v. Chaheine, No. 07-2052, 2007 WL 2561822, at *2 (10th Cir. Sept. 5, 2007) (unpublished) (reviewing district court's error in referring to the sentence that the court imposed as reasonable for

12

plain error, where defendant did not object to that reference during sentencing).

Nevertheless, we decline to do so in this particular case.

A month after Beltran-Lopez's sentencing, this court recognized a similar procedural sentencing error in Begay, 470 F.3d at 976-77. There, "we held it was error for the district court to apply the appellate presumption of reasonableness to the advisory guidelines when sentencing." Conlan, 2007 WL 2538047, at *2. Specifically, in Begay, the district court erred in concluding that it did not have discretion to impose a sentence outside the advisory guideline range unless it first determined that a within-guideline sentence would be unreasonable. See Begay, 470 F.3d at 975. While noting that we would ordinarily review such an error, unobjected-to during sentencing, for plain error, this court declined to do so in that case, concluding there was no reason for the defendant in that case to have anticipated such an error. See id. at 976. That same reasoning would apply in this case. There was no reason, before this court's Begay decision, for Beltran-Lopez to have objected to the district court's reference to the advisory guideline range as the "presumptive imprisonment range."[9] Therefore, in this case, we will review the district court's legal conclusions de novo and any factual findings for clear error. See United States v. Chavez-Calderon, 494 F.3d 1266,

_____

[9]The Government, arguing against Beltran-Lopez's request for a downward variance, also asserted that a within-guidelines sentence would be presumptively reasonable.

13

1268 (10th Cir. 2007).

### b.     Merits

The district court erred in treating the advisory guideline range as presumptively reasonable.  See Rita, 127 S. Ct. at 2465 (noting presumption of reasonableness of a within-guidelines sentence "applies only on appellate review"); see also Conlan, 2007 WL 2538047, at *3.  But in this case that error was harmless; that is, the "error did not affect the district court's selection of the sentence imposed."  United States v. Arrevalo-Olvera, 495 F.3d 1211, 1213 (10th Cir. 2007) (quotation omitted); see Begay, 470 F.3d at 976-77 (reviewing similar error for harmlessness under Fed. R. Crim. P. 52(a)[10]).

It is clear that the district court in this case realized that it had discretion to impose a lower sentence that still fell within the advisory guideline range, but the court chose not to do so and instead imposed a sentence at the very top of that advisory range.  See Arrevalo-Olvera, 495 F.3d at 1213-14.  The court further indicated that it had been inclined to impose a sentence above that range, but ultimately the court did not do so.  Therefore, "we have no reason to think that," if this court remanded with instructions to resentence Beltran-Lopez without treating the advisory guideline range as presumptively reasonable, "the district

---

[10]Rule 52(a) provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  The Government bears the burden of establishing, by a preponderance of the evidence, that an error is harmless.  See Arrevalo-Olvera, 495 F.3d at 1213.

14

court would impose a different sentence." Id. at 1214 (quotation omitted). Under these circumstances, the district court's error in referring to the advisory range as the "presumptive imprisonment range" was harmless.

### 3. Conclusion

For these reasons, the 125-month sentence the district court imposed was not procedurally unreasonable.

### B. Substantive unreasonableness

### 1. Standard of review

We do not require that the defendant object at sentencing to the length of the sentence after the district court imposes it, so long as he made the argument for a lesser sentence before the district court sentenced him. See United States v. Mancera-Perez, No. 06-2059, 2007 WL 2823479, at *2-*4 (10th Cir. Oct. 1, 2007). In this case, therefore, Beltran-Lopez adequately preserved this issue for review. We will review the length of his sentence for substantive reasonableness, "a standard which the Supreme Court has recently equated with review for an abuse of the sentencing court's discretion." Id. at *3 (citing Rita, 127 S. Ct. at 2465). "A sentence within the advisory Guidelines range," such as the one imposed in this case, "is afforded a rebuttable presumption of reasonableness during the process of appellate review that either the defendant or the government may rebut by demonstrating that the sentence is unreasonable when viewed

against the other factors delineated in § 3553(a)."[11]  Id. (quotation omitted).

### 2.    Merits

"Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)."  Conlan, 2007 WL 2538047, at *2.  "In any given case there could be a range of reasonable sentences that includes sentences both within and outside the [advisory] Guidelines range."  Begay, 470 F.3d at 975.  The question presented here, then, is not whether the district court could have justified a downward variance under the circumstances of this case, but rather whether the 125-month within-guidelines sentence that the court imposed was reasonable, see Pruitt, 2007 WL 2430125, at *9.

Beltran-Lopez argues that his 125-month sentence is unreasonably long because it creates an unwarranted sentencing disparity.  See 18 U.S.C. § 3553(a)(6) (directing the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").  Beltran-Lopez asserts that he received the same sentence, based upon his almost twenty-year-old California drug trafficking conviction involving the sale of ten dollars of marijuana to an undercover police

---

[11]Rita forecloses Beltran-Lopez's argument that it is error for this court to afford a within-guidelines sentence a rebuttable presumption of reasonableness on appeal.  See Rita, 127 S. Ct. at 2459, 2462-65.

16

officer, as a similarly convicted defendant who had a much more serious prior drug trafficking conviction would have received. Beltran-Lopez specifically points to three reasons why his sentence is thus unreasonable.

First, he argues that the conduct underlying this drug trafficking offense was minor. While this court has suggested this might be a factor that induces a district court to impose a sentence below the guideline range, see United States v. Hernandez-Castillo, 449 F.3d 1127, 1132 (10th Cir. 2006), cert. denied, 127 S. Ct. 936 (2007); see also United States v. Trujillo-Terrazas, 405 F.3d 814, 819-20 (10th Cir. 2005), this does not make the within-guidelines sentence imposed in this case unreasonable.

Second, Beltran-Lopez points to the fact that the California court sentenced him to only 204 days in jail and three years' probation on the drug trafficking offense. He contends that this sentence, therefore, did not qualify as a drug trafficking conviction that would support a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(i) until his probation was revoked (after he was later convicted of involuntary manslaughter, and he was sentenced to two years in prison for the probation revocation). But this argument bolsters the district court's concern with Beltran-Lopez's extensive criminal history. And it would be an anomalous result if Beltran-Lopez's drug trafficking conviction should be treated less seriously because he violated his probation, and did so by engaging in a course of conduct resulting in an involuntary manslaughter conviction. In this

17

case, Beltran-Lopez's criminal activity, which has continued over the past twenty years, is a valid justification for the district court's decision not to vary downward, despite the minor nature of the criminal conduct underlying the drug trafficking conviction used to enhance his offense level.

Third, Beltran-Lopez reiterates that his 1988 drug trafficking conviction was based upon criminal conduct occurring twenty years ago, in 1987. Cf. U.S.S.G. § 2L1.2 app. n. 1(B)(vii) (indicating the relevant "sentence imposed," for determining the application of an enhancement under § 2L1.2, is "without regard to the date of conviction"). For the same reasons discussed above, this factor is insufficient to rebut the presumptive reasonableness of the 125-month, within-guidelines sentence the district court imposed.

Beltran-Lopez's prior drug trafficking conviction qualifies for a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(i). He does not argue that it does not. In imposing a within-guideline sentence, the court considered whether the 18 U.S.C. § 3553(a) factors would support such a sentence. Those factors obligated the court to consider, among other things, Beltran-Lopez's characteristics and history, and the need for his sentence to reflect the seriousness of the offense, to afford adequate deterrence, and to protect the public from further crimes the defendant might commit. See 18 U.S.C. § 3553(a)(1), (2). The court did consider those factors, concluding that a sentence within-the advisory guideline range was "sufficient, but not greater than necessary" to meet the

18

sentencing purposes set forth in § 3553(a)(2). The court did not abuse its discretion in imposing such a sentence.

## III.    Conclusion

For the foregoing reasons, we conclude Beltran-Lopez's 125-month sentence was reasonable and AFFIRM.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge