**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ERNESTO PRIETO-CHAVEZ,

    Defendant - Appellant.

No. 07-2151

(D. New Mexico)

(D.C. No. CR-06-2375-WJ)

### ORDER AND JUDGMENT[*]

Before **KELLY**, **ANDERSON**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant and defendant Ernesto Prieto-Chavez pled guilty to one count of illegal reentry by an alien who had previously been deported following conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a)(1), (2) and (b)(2). He

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sought a downward departure from the Guidelines range provided by the advisory

United States Sentencing Commission, Guidelines Manual ("USSG") (2006), and

also requested a downward variance under 18 U.S.C. § 3553(a). Following his

sentencing hearing, Prieto-Chavez was sentenced to fifty-seven months'

imprisonment. He appeals, arguing his sentence is both procedurally and

substantively unreasonable. We affirm.


## BACKGROUND

In 1996, Prieto-Chavez broke into a home in Ruidoso Downs, New Mexico,

and stole a VCR machine. He was convicted of felony residential burglary,

felony larceny, and misdemeanor criminal damage to property, for which he

received a deferred sentence and three years of probation. Approximately one

month later, Prieto-Chavez resisted, obstructed and evaded an officer, for which a

New Mexico state court sentenced him to thirty days in jail. When Prieto-Chavez

was released from jail for that offense, his residential burglary probation was

revoked and he was sentenced to three years' imprisonment. After his release

from prison, immigration authorities removed Prieto-Chavez to Mexico on

December 12, 1998.

Prieto-Chavez subsequently reentered the United States illegally, and was

found by immigration authorities in the Lincoln County, New Mexico, jail on

July 12, 2002. A federal district court sentenced him to fifteen months'

imprisonment for illegal reentry and, upon his release, he was again removed to Mexico on August 15, 2003.

In September 2003, while in Mexico, Prieto-Chavez was hit by a car and suffered a broken hip or hips and legs. He has continued to experience medical complications from that injury. Prieto-Chavez admitted he returned once again illegally to the United States in September 2005. On July 10, 2006, Ruidoso, New Mexico, police officers arrested Prieto-Chavez for battery and concealing his identity. He was convicted of both state offenses, and was then turned over to immigration authorities on the instant illegal reentry offense. As indicated above, he subsequently pled guilty to the charge.

In preparation for sentencing, the United States Probation Office prepared a presentence report ("PSR"). The PSR calculated that Prieto-Chavez's base offense level under the advisory Guidelines was eight. It then recommended an increase of sixteen levels because Prieto-Chavez's prior residential burglary qualified as a crime of violence under USSG §2L1.2(b)(1)(A). The PSR further recommended a three-level reduction for acceptance of responsibility under USSG §3E1.1, resulting in a total adjusted offense level of twenty-one. Prieto-Chavez had a criminal history category V, which, combined with an offense level of twenty-one, yielded an advisory Guidelines range of seventy to eighty-seven months. The PSR also listed several factors which might warrant a departure from that advisory Guidelines range. Thus, the PSR considered Prieto-Chavez's

cultural assimilation argument,[1] his argument about his chronic medical condition resulting from the car accident, and whether his criminal history might be overstated. The PSR concluded that Prieto-Chavez's criminal history was more similar to a defendant in category IV than in category V, but it found no other grounds for departure.

Prieto-Chavez filed a sentencing memorandum and motion for a sentence varying from the Guidelines range, in which he asked for a variance based on several factors.[2] He sought a sentence of twelve months and one day, arguing that sentence "would comply with the requirements of 18 U.S.C. 3553(a) by imposing

[1]Prieto-Chavez moved from Mexico to the United States when he was eight years old, and has spent the remainder of his life thus far in the United States, except for the periods when he was removed to Mexico. Additionally, virtually his entire family, including siblings, lives in the United States.

[2]In his sentencing memorandum and motion for a variance, Prieto-Chavez did not actually move for any downward "departure" from the advisory Guidelines range suggested by the PSR. In his brief on appeal, however, Prieto-Chavez interchangeably uses the terms "downward departure" and "variance," and he asserts that he moved in the district court for a "downward departure" as well as a "variance." Departures and variances are two different things. A departure occurs "when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines." United States v. Atencio, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007). A variance occurs "[w]hen a court enhances or detracts from the recommended range through application of § 3553(a) factors." Id. Following United States v. Booker, 543 U.S. 220 (2005), we continue to hold that we lack jurisdiction to review discretionary decisions not to depart downward from a Guidelines sentencing range. United States v. Chavez-Diaz, 444 F.3d 1223, 1229 (10th Cir. 2006). However, we retain jurisdiction to review a sentence for reasonableness, "tak[ing] into account [the defendant's] asserted grounds for departure" when conducting that reasonableness review. Id.

-4-

a sentence 'sufficient, but not greater than necessary, to comply with the purposes' of sentencing set forth in the statute." Def.'s Sent. Mem. and Mot. for Sentence Varying from the Guideline Range at 1, R. Vol. I, tab 22 (quoting 18 U.S.C. § 3553(a)). Specifically, he argued that by counting his prior felony burglary conviction both as grounds for the sixteen-level increase in his base offense level and as contributing to his criminal history category, the court would impermissibly "double-count" that conviction and impose a sentence far more than necessary to accomplish the sentencing goals of 18 U.S.C. § 3553(a). He also argued his significant medical problems stemming from the car accident merited a downward variance, that he was not a dangerous individual, and that he was culturally assimilated to the United States, given that he had lived in the United States since the age of eight, he spoke fluent English, and virtually his entire family lived in the country.

In response, the government noted that our circuit had already rejected the double-counting argument, in United States v. Florentino, 922 F.2d 1443 (10th Cir. 1990). The government further agreed with the PSR's conclusion that Prieto-Chavez's criminal history was overstated and that he appropriately was placed in a category IV, rather than V. The government erroneously represented to the

court that a presumption of reasonableness attached in the district court to a correctly-calculated within-Guidelines sentencing range.[3]

At sentencing, the government reiterated its view that the district court should apply a presumption of reasonableness to a correctly-calculated Guidelines sentence. The government then turned to the issue of Prieto-Chavez's medical condition, stating "[u]nder the guidelines, under 5H1.4, I believe, it's normally discouraged as a factor for departure; however, I think under Booker, the Court could still consider it, certainly, under the sentencing factors in 18 U.S.C. 3553(a)." Tr. of Sentencing Proceedings at 5-6, R. Vol. III. Both defense counsel and the prosecution acknowledged that Prieto-Chavez's medical condition was a "double-edged sword" in that it was likely he could get better treatment for it in the Bureau Prisons than in Mexico, but that would mean he was not at liberty while seeking medical care. Defense counsel then argued that Prieto-Chavez had experienced a "significant level of cultural assimilation," although he acknowledged it was "maybe not one that rises to the level of requiring a departure under the guidelines." Id. at 7-8.

In pronouncing sentence, the district court stated as follows:

I've considered the . . . Presentence Report's factual findings. I've considered the sentencing guideline applications and the factors of 18 U.S.C. 3553(a)(1) through (7). Also, we took a break in the

---

[3]As we explain more fully below, that presumption of reasonableness is an appellate presumption, not a district court presumption. See Rita v. United States, 127 S. Ct. 2456 (2007).

sentencing, and I complement and commend counsel. . . for the very well thought out briefing, and . . . both sides made some very strong and compelling arguments on both issues; that is, issues in favor of the defendant and issues in favor of the government.

Now, under the law, I'm required to first arrive at a defendant's guideline sentence. . . .

. . . On the cultural assimilation, the problem with that is . . . Mr. Prieto-Chavez's case, in my view, is not out of the heartland of cases. Certainly, a lot of individuals who have been long-time residents of the United States and are deported based on a felony conviction, I mean, his situation is by no means unique. And if you start lowering the sentence because [of] the issues of cultural assimilation for one, you have to do it for all defendants, and so I don't see that as a grounds for departure.

Id. at 9-10. With respect to the double-counting argument, the district court acknowledged that Tenth Circuit precedent barred that argument, but concluded that "to the extent that double counting is something that I feel should be addressed, I think it should be addressed in the context of the overall reasonable analysis that I'm required to do, reciting, relying on the sentencing factors." Id. at 11.

The court then turned to the sentencing factors and stated as follows:

[F]irst, the nature and circumstances of the offense and history and characteristics of this defendant. Now, he – let me also back up to the guidelines. I mean, [defense counsel] mentioned [Prieto-Chavez's] injury. It occurred in September of 2003, and we are now in 2007. And I mean, there may be reasons that may be economic, may be lack of ability to obtain health care, but . . . the point I'm making . . . is he had an opportunity to have the problem addressed while he was in Mexico, and that wasn't done for whatever reason. . . .

Now, he may very well have come back to the United States believing that he could get his medical issues addressed, but when he was here . . . illegally he wasn't caught at a border checkpoint. The reason that this illegal reentry case was filed . . . is that he committed

a battery in Ruidoso, in Lincoln County, and there was a battery count and a concealing identity and new law violation. . . . I guess . . . obviously, he's got issues with his leg and has a medical condition, but that didn't stop him from committing a new law violation in Lincoln County.

So I don't see any grounds for departure under the guidelines based on his medical condition, because I think [government counsel] is correct that, if he's going to require surgery and further medical attention – and I'm going to recommend that he be medically evaluated by the Bureau of Prisons as soon as possible – that is more likely to be addressed and he's more likely to be provided the necessary medical care while in the custody of the Bureau of Prisons as evidenced by the fact that . . . for the time he was in Mexico from September of 2003 until he illegally reentered the United States, . . . this surgical care that he claims he needs was not . . . done before that.

Id. at 11-13.  The court thus concluded that for the purpose of the 18 U.S.C.

§ 3553(a)(2)(D) sentencing factor of providing the defendant "with needed . . .

medical care . . . in the most effective manner," Prieto-Chavez was best served

being sent to the Bureau of Prisons.  Id. at 13.

Returning to Prieto-Chavez's criminal history and the nature and

characteristics of the defendant, as § 3553(a) requires, the court explained that the

sixteen-level increase in his base offense level was "because he has a conviction

for residential burglary," id., and "everyone who's convicted of a residential

burglary under the guidelines on an illegal reentry gets that 16-level increase

because the guidelines treat it as a crime of violence."  Id. at 14.  The court then

reviewed his criminal history, including his several prior illegal reentries into the

United States, and noted that "although I lowered his criminal history score based

on overrepresentation, certainly an argument could be made that that should not have been done because he had prior convictions for which he received no criminal history points." Id. at 15. The court concluded by observing that "his criminal history, in my view, shows that he does not have respect for United States law because we're seeing multiple illegal reentries after deportation on an offense constituting an aggravated felony." Id.

At this point, the court stated that it agreed with the government that "basically there is a presumption of reasonableness that attaches to a correctly calculated guideline sentence," that the advisory Guidelines sentencing range was reasonable and that "the presumption of reasonableness has not been overcome by the defendant for the reasons that I have stated." Id. at 16. The court therefore imposed a sentence of fifty-seven months, at the low end of the advisory Guidelines range.

Prieto-Chavez appeals, arguing: (1) "the court erred in applying the advisory guidelines as if they were still mandatory, contrary to Booker and § 3553(a)"; (2) the court erred "when it sought to craft a sentence that was 'reasonable,' instead of one that was 'sufficient, but not greater than necessary,' to comply with the purposes of sentencing"; and (3) the sentence imposed was substantively unreasonable. Appellant's Br. at 10-11.

**DISCUSSION**

"When reviewing a sentencing challenge, we evaluate sentences imposed by the district court for reasonableness." United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007). "Reasonableness has both procedural and substantive components." United States v. Cage, 451 F.3d 585, 591 (10th Cir. 2006). "Procedural reasonableness involves using the proper method to calculate the sentence." Conlan, 500 F.3d at 1169. "Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." Id. (citing United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006) (per curiam)). A properly calculated Guidelines sentence is entitled to a presumption of reasonableness at the appellate level.

**I.  Did the district court treat the Guidelines as mandatory?**

Prieto-Chavez first argues the district court treated the Guidelines as mandatory, in violation of the Supreme Court's directive in Booker. He argues the court demonstrated this by initially finding that his case was not outside of the "heartland," and that finding "dictated the remainder of the court's analysis, in which it failed to look beyond the guidelines to determine what sentence was sufficient, but not greater than necessary, for Mr. Chavez-Prieto based on the statutory sentencing considerations in 18 U.S.C. § 3553(a)." Appellant's Br. at 13-14.

-10-

We faced an identical argument in the recent case of United States v.

Galarza-Payan, 441 F.3d 885 (10th Cir.), cert. denied, 127 S. Ct. 434 (2006).  As

we explained,

> The term "heartland" has its origins in the Guidelines' policy statements.  The Guidelines instructed courts not to depart from a sentencing range absent unusual circumstances.  The reason for this was that departures outside the applicable range were intended for extraordinary cases that, because of a combination of such characteristics or circumstances, differ significantly from the heartland cases covered by the Guidelines.  Courts used this terminology as a shorthand way of analyzing whether particular defendants qualified for a downward or upward departure under the Guidelines.

Id. at 888 (internal quotations and alterations omitted).  As in Galarza-Payan, in

this case "the district court, while using pre-Booker terminology, did not sentence

[the defendant] in a mandatory fashion."  Id.  Rather, the record makes clear, as

the excerpts above demonstrate, that the district court understood its discretion

and followed the § 3553(a) factors in sentencing Prieto-Chavez.  "Even in the

post-Booker legal landscape, we can expect judges to employ the familiar

terminology of the Guidelines."  Id.[4]

---

[4]As indicated above, however, to the extent that Prieto-Chavez attempts to appeal from the district court's discretionary decision not to depart downward when calculating the Guidelines sentence, we lack jurisdiction to review that claim.  But we may still review the sentence, and any reasons proffered for departure, when we conduct our reasonableness review.

**II.  Did the district court err in applying a presumption of reasonableness to the Guidelines sentence or otherwise fail to properly apply the § 3553(a) factors?**

Prieto-Chavez next argues that the district court's sentencing decision was procedurally defective in that it required him to "rebut a presumption of reasonableness of a guideline sentence before it would consider a below-guideline variance." Appellant's Br. at 21. He also argues the district court failed to seek a sentence that was "sufficient, but not greater than necessary" to effectuate the purposes of 18 U.S.C. § 3553(a).

The district court, as well as the government, referred at several points to a presumption of reasonableness of a within-Guidelines sentence, and the court noted that Prieto-Chavez had failed to rebut that presumption. This was an error. Prior to the district court's sentencing proceeding in this case, our court had suggested that a district court errs when it applies the appellate presumption of reasonableness to the advisory Guidelines when sentencing. United States v. Begay, 470 F.3d 964, 977 (10th Cir. 2006), cert. granted, 128 S. Ct. 32 (U.S. Sept. 25, 2007) (No. 06-11543); see also Conlan, 500 F.3d at 1169 (noting that in Begay, "we held it was error for the district court to apply the appellate presumption of reasonableness to the advisory guidelines when sentencing," and that "[t]his decision was recently validated, although not specifically mentioned, in Rita v. United States, 127 S. Ct. 2456 (2007)."). As we acknowledged in

Conlan, "Rita thus makes clear that the presumption of reasonableness applies only at the appellate level." Conlan, 500 F.3d at 1169.

Prieto-Chavez did not, however, object to the district court's application of a presumption of reasonableness. Ordinarily, we review such an unobjected-to error for plain error. See Begay, 470 F.3d at 976; see also Conlan, 500 F.3d at 1169-70 (considering whether to apply plain error review to similar claim, but concluding that the defendant in that case had adequately preserved the issue at sentencing). In two unpublished cases we have applied plain error. United States v. Esparza-Estrada, No. 07-2037, 2007 WL 3194849, at *3-4 (10th Cir. Oct. 25, 2007) (unpublished); United States v. Chaheine, No. 07-2052, 2007 WL 2561822, at *2 (10th Cir. Sept. 5, 2007). However, in Begay itself, although acknowledging that plain error would be the normal standard of review, we concluded that there was no reason for the defendant in that case to anticipate that the district court would adopt such a "novel interpretation of Booker." Begay, 470 F.3d at 976. We therefore excused the defendant's failure to object and reviewed for harmless error.

In another unpublished case, we also excused the defendant's failure to object to the district court's use of a presumption of reasonableness for a Guidelines sentence, on the ground that our decision in Begay, making it clear that it was error for the district court to apply a presumption of reasonableness at sentencing, was not issued until a month after the defendant's sentencing. United

-13-

States v. Beltran-Lopez, No. 06-1530, 2007 WL 3226460, at * 4 (10th Cir.

Oct. 31, 2007) (unpublished) ("There was no reason, before this court's Begay

decision, for [the defendant] to have objected to the district court's reference to

the advisory guideline range as the 'presumptive imprisonment range.'").

In this case, by contrast, Begay had been decided some five months prior to

Prieto-Chavez's sentencing proceeding. On the other hand, neither the

government nor the district court were aware that it was erroneous for the district

court to apply a presumption of reasonableness to a Guidelines sentence. We

therefore analyze the effect of the district court's error under the plain error

standard, on the assumption that Prieto-Chavez failed to raise the error, and under

a harmless error standard, on the assumption that we forgive that failure.[5]

Under a review for plain error, Prieto-Chavez must demonstrate that "there

is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4)

seriously affects the fairness, integrity, or public reputation of judicial

proceedings." Begay, 470 F.3d at 976 (quoting United States v. Gonzalez-Huerta,

_____

[5]We feel comfortable reviewing the district court's error under both standards in part because a review of our caselaw both prior to and after Rita indicates that there was some confusion about the propriety of a district court's application of a presumption of reasonableness to a Guidelines sentence. See, e.g., United States v. Angel-Guzman, 506 F.3d 1007, 1016 (10th Cir. 2007) (noting that prior to Rita, "some district judges in the Circuit interpreted our caselaw as embracing a presumption of reasonableness at the sentencing court level, as well [as on appeal]").

403 F.3d 727, 732 (10th Cir. 2005) (en banc)). Prieto-Chavez fails to meet the third prong.

As the record and the excerpts above demonstrate, while the district court certainly stated that a presumption applied and Prieto-Chavez had failed to rebut it, it is clear that the court considered all the § 3553(a) factors and evaluated whether to impose a sentence outside of (lower than) the advisory Guidelines range. Ultimately, those § 3553(a) factors, particularly Prieto-Chavez's criminal history, the fact that he would receive better medical care were he to be in the custody of the Bureau of Prisons for a sufficient time to treat his medical condition, the fact that his cultural assimilation argument was not unique in any way, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been convicted of similar crimes (in this case illegal reentry after prior deportation following an aggravated felony conviction), convinced the district court that a reasonable sentence was one at the bottom of the advisory Guidelines range. The district court conducted exactly the kind of review of the § 3553(a) factors, as applied to Prieto-Chavez's particular situation, as is required under the advisory Guidelines system. There is no indication that, even without a presumption of reasonableness, the district court would have selected a lower sentence as reasonable for Prieto-Chavez. We accordingly conclude Prieto-Chavez has failed to demonstrate that the district court's error

about a presumption affected his substantial rights, or that the district court erred in any other way in its analysis of the § 3553(a) sentencing factors.

Under a harmless error standard of review, "the United States has the burden to show by a preponderance of the evidence that the district court's error did not affect the court's selection of the sentence imposed." Conlan, 500 F.3d at 1170. We conclude that the government has met that burden. As our discussion above indicates, the record makes it clear that, even though the court sentenced Prieto-Chavez at the low end of the advisory Guidelines range, the error did not affect the court's selection of the sentence imposed.[6]

## III. Was the sentence imposed substantively reasonable?

Having determined that Prieto-Chavez's within-Guidelines sentence was properly calculated, we finally consider whether the fifty-seven month sentence imposed in this case was substantively reasonable. That sentence is, on appeal, accorded a rebuttable presumption of reasonableness. As the Supreme Court has recently confirmed, this amounts to a review "under an abuse-of-discretion standard." Gall v. United States, 128 S. Ct. 586, 597 (2007). In this case, the district court thoroughly and carefully supported its sentencing decision,

---

[6]In so concluding, we, of course, by no means suggest that the plain error and the harmless error standards are the same. Indeed, as explained above, for example, the burden of proof is placed on different parties in each test, and each test has a different focus. In this case, the record makes it clear that Prieto-Chavez did not meet his burden of establishing that the district court's error affected his substantial rights, and, alternatively, the government met its burden of showing that the error was harmless.

explaining how the decision was consistent with the § 3553(a) factors. The court

specifically addressed all the arguments made by both sides regarding an

appropriate sentence. We conclude that the court did not abuse its discretion and

that the fifty-seven month sentence imposed was reasonable.


## CONCLUSION

For the foregoing reasons, the sentence in this case is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge