**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 2, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

JULIO RODRIGUEZ-LOPEZ,

　　　　Defendant - Appellant.

No. 07-2025

(D. New Mexico)

(D.C. No. CR-05-2458-JC)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **ANDERSON**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant Julio Rodriguez-Lopez pled guilty pursuant to a plea agreement to one count of conspiring to distribute and conspiring to possess with intent to distribute more than one kilogram of heroin, in violation of 21

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. He was sentenced to seventy months' imprisonment, followed by five years of supervised release. Rodriguez-Lopez appeals his sentence, which we affirm.

## BACKGROUND

This case arose out of a multi-district investigation of Mexican heroin traffickers from September 2004 until November 2005. Mexican heroin producers in the state of Nayarit, Mexico, established the trafficking organization, pursuant to which the producers recruited Mexican nationals to come to the United States illegally and distribute heroin throughout a number of United States cities, including Albuquerque, New Mexico; Phoenix, Arizona; Pueblo and Denver, Colorado; Reno and Las Vegas, Nevada; Portland, Oregon; and several cities in California.

It was a complex organization, with different "departments" and individuals assigned particular tasks. In September 2004, Juan Arturo-Cruz-Mora, one of Rodriguez-Lopez's co-defendants, became the manager of the Albuquerque drug distribution organization. By the spring of 2005, Cruz's Albuquerque heroin distribution organization was generating $90,000 to $120,000 in cash per month.

The Albuquerque area was divided by geographic delivery routes in the Northeast and Southeast Heights and the West Side. A single dispatcher managed a delivery route and would organize and direct two or three street level couriers.

There usually were two dispatchers working in the Albuquerque area at any one time. The dispatchers and local managers lived and worked in the main "stash house," which was located at 2909 Cagua NE in Albuquerque. The dispatchers and local managers packaged and supervised the re-packaging of bulk heroin into individual balloons which contained one-quarter gram of heroin. Approximately 30 balloons were placed in a plastic baggie, forming a "lonche" or "clavo." Each lonche or clavo contained approximately 7.5 grams of heroin.

Heroin customers would call the dispatchers at particular cell phone numbers and place an order. The dispatcher would then direct the customer to a particular location and give the customer an estimate of when the heroin would be delivered. The dispatcher would call the courier assigned to that route and let him know which customer would be waiting at a particular location. If a courier ran low in his heroin supply, the dispatcher would arrange to have someone deliver more heroin to the courier and pick up any cash the courier had already collected from heroin sales.

Rodriguez-Lopez was a street level courier for the Cruz organization. On October 11, 2005, DEA agents saw Lopez-Rodriguez and a co-conspirator, Oscar Gonzales-Diaz, driving a car used by the organization and conducting drug deals. Two days later, officers saw Rodriguez-Lopez and Gonzales-Diaz conducting drug deals out of yet another car used by the organization. The officers stopped the car. They observed that both men were nervous, that neither had

identification documents, and neither could say where he lived. Rodriguez-Lopez said he had been in the country for one month and had been with Gonzales-Diaz for one week.

The two men then consented to a search of the car, in which the officers found sixteen balloons of heroin, weighing a total of approximately 3.5 grams, and $788 in cash. Rodriguez-Lopez admitted there was heroin in the car, although he said it was only six balloons, half of which belonged to him and half of which belonged to Gonzales-Diaz. Both men were arrested and immigration authorities placed a hold on them both.

After Rodriguez-Lopez and Gonzales-Diaz were arrested, intercepted phone calls between members of the organization indicated that they suspected that their activities were being monitored by law enforcement authorities. Members of the organization stopped answering customers' calls and used the stash house on Cagua as little as possible. On October 20, 2005, DEA agents decided to make arrests. Accordingly, several members of the organization were arrested on October 20, 2005, and several others were arrested a few weeks later.

On October 21, DEA agents executed a search warrant at 2909 Cagua. They found more than a kilogram of heroin, some of which was packaged in balloons, thousands of balloons to be used for repackaging bulk heroin, scales, cell phones, two guns, and numerous notes and receipts tying various members of the organization to the address.

As indicated, Rodriguez-Lopez pled guilty, pursuant to a plea agreement, to conspiracy to possess with intent to distribute more than one kilogram of heroin. The plea agreement acknowledged that Rodriguez-Lopez "possessed with the intent to distribute aproximately16 balloons of heroin, weighing approximately 3.5 net grams." Plea Agreement at 4, R. Vol. I, doc 183.[1] The plea agreement further stipulated that the applicable base offense level for Rodriguez-Lopez under the United States Sentencing Commission, Guidelines Manual ("USSG"), is 32, and that Rodriguez-Lopez should receive a three-level reduction in that offense level because of his acceptance of responsibility. The parties also agreed that Rodriguez-Lopez might be eligible for "safety valve" relief.[2] The agreement

---

[1]A complete copy of the plea agreement is not contained in the record on appeal in this case. However, neither party disputes what the agreement states, so we base our representation of what the agreement says on those parts of the plea agreement that are contained in the record on appeal, and the unchallenged representations of the parties.

[2]    Under the safety-valve, a defendant may be sentenced pursuant to an advisory guideline range [and below the statutory minimum] if the district court finds that (1) he does not have more than one criminal history point; (2) he did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) he was not an organizer, leader, manager, or supervisor of others in the offense and was not engaged in a continuing criminal enterprise; and (5) not later than the time of the sentencing hearing, he has truthfully provided to the Government all information and evidence he has concerning the offense

(continued...)

further stipulated that the government did not have sufficient evidence to warrant an upward adjustment for possession of a firearm or for distribution of a controlled substance within 1000 feet of a school, nor did it have sufficient evidence to warrant an upward adjustment on the ground that Rodriguez-Lopez had an aggravating role in the offense. The agreement acknowledged, however, that the parties' stipulations were not binding on the court.

In preparation for sentencing, the United States Probation Office prepared a presentence report ("PSR"). The PSR agreed with the parties' stipulations in the plea agreement and concluded that Rodriguez-Lopez's total offense level was 29. The PSR also concluded that Rodriguez-Lopez was a "street level courier" for Cruz's organization, but that his role was "vital and necessary," such that no downward adjustment for a lesser role was appropriate. With a criminal history category of I, the PSR recommended an advisory Guidelines sentencing range of 87 to 108 months' imprisonment. It noted, however, that the statutory minimum was 120 months, and that the appropriate Guidelines sentence was therefore 120 months.

---

[2](...continued)
        that were part of the same course of conduct or of a
        common scheme or plan.

United States v. Cervantes, 519 F.3d 1254, 1256 (10th Cir. 2008) (citing 18 U.S.C. § 3553(f); USSG §5C1.2).

Rodriguez-Lopez objected to the determination that he was not entitled to a four-level minimal participant adjustment pursuant to USSG §3B1.2(a). He also argued he should receive a variance from the Guidelines sentencing range on the basis of several 18 U.S.C. § 3553(a) factors (because he played a minor or minimal role in the conspiracy inasmuch as he was only involved for four weeks, because of his family circumstances, and because he posed little risk of recidivism). He further argued that he was eligible for a safety valve reduction, which would permit a sentence below the statutory minimum. The government responded that the Guidelines calculations already took into consideration the limited amount of time Rodriguez-Lopez had participated in the conspiracy, but that his role in the conspiracy was vital and necessary to its success, and that a Guidelines sentence would be reasonable. The government also objected to Rodriguez-Lopez's claim that he should receive a minimal role adjustment and argued that no downward variance was appropriate under 18 U.S.C. § 3553(a). The government did agree, however, that a safety valve reduction was appropriate, and that an addendum to the PSR would reflect that. This reduced his total adjusted offense level to 27, thereby bringing the advisory Guidelines range to seventy to eight-seven months.

At sentencing, the district court heard argument from Rodriguez-Lopez, and then stated:

All right. The Court has reviewed the presentence report factual findings and has considered the sentencing guideline applications and the factors set forth in 18 [U.S.C. § ] 3553(a)(1) through (7).

With respect to defendant's arguments addressing the 3553(a) factors, I have carefully considered those arguments. I find nothing in the particular facts of this case to persuade me that the presumptively reasonable guideline range is anything other than an accurate reflection of the factors I am required to consider.

The favorable characteristics of the defendant, such as his acceptance of responsibility and lack of criminal history, have already been taken into account in the guideline sentence as calculated in the presentence report.

The offense level is 27, and the criminal history category is I. Pursuant to 5G1.1, the guideline imprisonment range is 70 to 87 months. The Court notes the defendant was involved in a heroin trafficking operation and was held accountable for between one and three kilograms of heroin.

Tr. of Sentencing at 5, R. Vol. III. The court then imposed a seventy-month sentence, followed by five years of supervised release.

Rodriguez-Lopez appeals his sentence, arguing (1) the district court erroneously treated the Guidelines as mandatory, contrary to United States v. Booker, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a); (2) the district court erred in imposing a "reasonable" sentence, rather than a sentence "sufficient, but not greater than necessary" to comply with § 3553(a)(2); and (3) the sentence imposed was substantively unreasonable.

## DISCUSSION

### I. Treatment of Guidelines:

Rodriguez-Lopez argues the district court erred by treating the Guidelines as mandatory. He alleges the court did this by making an "initial, *de facto*, finding that Mr. Rodriguez-Lopez' case was not outside of the 'heartland.'" Appellant's Br. at 23. Rodriguez-Lopez bases this argument on the following statement by the district court: "I find nothing in the particular facts of this case to persuade me that the presumptively reasonable guideline range is anything other than an accurate reflection of the factors I am required to consider." Tr. of Sentencing at 5, R. Vol. III. We disagree. The district court did not make any finding about the "heartland," and its comments cannot reasonably be construed as doing so. Rather, the district court's comments at sentencing made it abundantly clear that the court understood that the Guidelines are now advisory, not mandatory. There was, however, an error in the district court's adoption of a presumption of reasonableness. We discuss this error below.

### II. Reasonable vs. sufficient-but-not-greater-than-necessary sentence:

Next, Rodriguez-Lopez argues the district court committed a procedural error in that it "required that [Rodriguez-Lopez] rebut a presumption of reasonableness of a guideline sentence before it would consider a below-guideline variance." Appellant's Br. at 30.

"Post-Booker, we review sentences for reasonableness under an abuse of discretion standard." United States v. Sutton, __ F.3d __, 2008 WL 879429, at *3 (10th Cir. April 3, 2008) (citing Gall v. United States, 128 S. Ct. 586, 594 (2007)). "Reasonableness includes a procedural component, which includes how the sentence was calculated, and [a] substantive component concerning the length of the sentence actually imposed." Id. "If the district court correctly calculates the Guidelines range based upon the facts and imposes sentence within that range, the sentence is entitled to a presumption of reasonableness." Id.; see Rita v. United States, 127 S. Ct. 2456, 2462-63 (2007). That presumption is, however, strictly an appellate presumption. United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007) ("Rita thus makes clear that the presumption of reasonableness applies only at the appellate level.").

In this case, the district court explicitly stated that the Guidelines range was "presumptively reasonable." Tr. of Sentencing at 5, R. Vol. III. That was an error. See id. at 1169 (noting that in United States v. Begay, 470 F.3d 964 (10th Cir. 2006), overturned on other grounds, Begay v. United States, 128 S. Ct. 1581 (2008), "we held that it was error for the district court to apply the appellate presumption of reasonableness to the advisory guidelines when sentencing," and that "[t]his decision was recently validated, although not specifically mentioned, in Rita"); see also United States v. Angel-Guzman, 506 F.3d 1007, 1015 (10th Cir. 2007) ("The Rita Court emphasized that a presumption of reasonableness 'applies

-10-

only on appellate review.'") (quoting Rita, 127 S. Ct. at 2465).  Rodriguez-Lopez

did not object to the district court's invocation of a presumption of

reasonableness.  Ordinarily, we review such an unobjected-to error for plain error.

See Conlan, 500 F.3d at 1169-70 (considering whether to apply plain error review

to similar claim, but concluding that the defendant in that case had adequately

preserved the issue at sentencing).  In an unpublished decision raising the

identical issue, we discussed our published and unpublished decisions addressing

this issue, noting that some applied plain error and some applied harmless error.

See United States v. Prieto-Chavez, 07-2151, 2008 WL 193234, at **6-7 (10th Cir.

Jan. 23, 2008) (unpublished).  In that case, we examined the error under both a

plain error and a harmless error standard, concluding that the defendant did not

obtain relief under either standard.  We take the same course here.[3]

"Plain error exists only where (1) there was error, (2) that is plain, (3) that

affects substantial rights, and (4) that seriously affects the fairness, integrity or

public reputation of judicial proceedings."  United States v. Thompson, 518 F.3d

---

[3]We examined the district court's procedural error under both a plain and
harmless error standard, because, prior to Rita, our caselaw was not consistent on
whether a presumption of reasonableness applied at the district court level.  See
United States v. Angel-Guzman, 506 F.3d 1007, 1016 (10th Cir. 2007) ("The
decisions of this Circuit prior to Rita did not explicitly recognize that the
presumption of reasonableness is confined to the appellate level.  Indeed, some of
the district judges in the Circuit interpreted our caselaw as embracing a
presumption of reasonableness at the sentencing court level, as well.")

832, 864 (10th Cir. 2008) (further quotation omitted).  Rodriguez-Lopez fails to meet the third prong.

As the record and the excerpt above demonstrate, while the district court referred to a presumption of reasonableness, it is clear that the court considered all the § 3553(a) sentencing factors, as well as Rodriguez-Lopez's arguments for a sentence lower than the advisory Guidelines range.  There is no indication that, even without a presumption of reasonableness, the district court would have selected a lower sentence.  We therefore conclude that Rodriguez-Lopez has failed to demonstrate that his substantial rights were affected by the district court's error.

Under a harmless error standard of review, "the United States has the burden to show by a preponderance of the evidence that the district court's error did not affect the court's selection of the sentence imposed."  Conlan, 500 F.3d at 1170.  We conclude that the government has met that burden.  As our discussion above indicates, the record makes it clear that, even though the court sentenced Rodriguez-Lopez at the low end of the advisory Guidelines sentencing range, the court's error in suggesting a Guidelines sentence was presumptively reasonable did not affect the court's selection of the sentence imposed.  In so holding, we of course do not suggest that the plain error and harmless error standards are the same.  We simply conclude that Rodriguez-Lopez did not meet his burden to establish that the court's plain error affected his substantial rights, and,

-12-

alternatively, we conclude that the government met its burden of establishing that the error was harmless.

We perceive no other procedural error in the court's selection of a sentence. The district court demonstrated its understanding that it was obligated to calculate a sentencing range under the advisory Guidelines and then evaluate that range in light of the § 3553(a) factors. While the court certainly did not engage in an extensive discussion, its discussion was adequate. We do not require the district court to recite "any magic words," nor do we require individual consideration of each § 3553(a) factor. We do, however, require that the district court provide us with some basis for concluding "that [it] has considered the parties' legal arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Rita, 127 S. Ct. at 2468. The district court did that in this case. See United States v. Sanchez-Suarez, 446 F.3d 1109, 1117 (10th Cir. 2006) (noting the requirement "that district courts provide sufficient reasons to allow meaningful appellate review of their discretionary sentencing decisions").

### III. Substantive reasonableness of sentence:

"'[R]easonableness' is the standard controlling appellate review of the sentences district courts impose." Kimbrough v. United States, 128 S. Ct. 558, 564 (2007); see also Thompson, 518 F.3d at 869. "We review for substantive reasonableness 'under an abuse-of-discretion standard,' and, '[w]hen conducting

this review, [we] will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Thompson, 518 F.3d at 869 (quoting Gall, 128 S. Ct. at 597). "[W]e may apply a presumption of reasonableness to a sentence properly calculated under the Guidelines." Id. "The defendant may rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in [18 U.S.C.] § 3553(a)." Id. (further quotation omitted).

Rodriguez-Lopez's sentence was within the Guidelines range, so we accord it a presumption of reasonableness. Rodriguez-Lopez has failed to rebut that presumption in light of the factors listed in § 3553(a).[4] We therefore conclude that the district court did not abuse its discretion, and we affirm Rodriguez-Lopez's sentence as substantively reasonable.

---

[4]Rodriguez-Lopez argues that his sentence should have been reduced to avoid unwarranted disparities between him and his co-defendants. It is permissible for a district court to consider unwarranted disparities between co-defendants. See United States v. Smart, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted *disparities* between codefendants who are similarly situated, and . . . the district court may compare defendants when deciding a sentence."). However, we have little information about the other couriers to whom Rodriguez-Lopez compares himself. He concedes that only two of them were sentenced prior to his sentencing, and one co-defendant received a sentence of thirty-three months and one received a sentence of eighty-seven months. Rodriguez-Lopez does not convince us that there were *unwarranted disparities* between himself and similarly situated co-defendants, much less any disparity nation-wide.

-14-

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence in this case.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge